# United States Court of Appeals
## For the First Circuit

No. 03-1384

UNITED STATES OF AMERICA,

Appellee,

v.

STELIOS ANTONAKOPOULOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Victor A. Wild, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, and Cynthia A. Young, Assistant United States Attorney, were on brief for appellee.

Terrance J. McCarthy for appellant.

February 22, 2005

**LYNCH**, **Circuit Judge**.  In this case we set forth our standards for review of unpreserved claims of sentencing errors in the aftermath of United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005).

Defendant Stelios Antonakopoulos was convicted by a jury on August 2, 2002 on one count of bank fraud, under 18 U.S.C. §§ 1344 and 2, and one count of theft/embezzlement by a bank officer, under 18 U.S.C. § 656.  He defrauded the National Bank of Greece (NBG) in November 1990, and embezzled funds from the Mercantile Bank and Trust Company (MBT) in Boston, in July of 1991. Antonakopoulos had been Branch Manager of the Boston Branch of NBG from March 1983 to July 20, 1988, at which time he became President and a member of the Board of Directors of MBT.  He was sentenced to 30 months' imprisonment, largely based on the calculation of loss amount under the Sentencing Guidelines.  He was also ordered to pay $350,000 in restitution.

Antonakopoulos has appealed his sentence, arguing that the district court erred on both points -- the amount of loss was lower and so his sentence should be shorter and the restitution was excessive.  On appeal he also argues for the first time that a jury, not a judge, should have calculated the loss amount.  From this he argues he is entitled to a remand for resentencing under Booker.

The government now concedes that a portion of the restitution amount ordered was in error under the statutory scheme in place at the time of the offense. It requests that the restitution amount be reduced from $350,000 to $100,000. We order the reduction in the restitution amount accordingly. We reject all of Antonakopoulos's other claims, including his Booker claim as it is presented, but leave one door open under Booker.

## I.

The district court's calculation of loss attributable to the defendant and the amount of restitution is described herein. The details of how the frauds were perpetrated are not described, other than to say defendant kept helping himself to money to which he was not entitled in order to buy stocks on the Athens Stock Exchange (ASE) and then, as the stock prices fell, to pay off previous loans obtained by fraud. The defendant thought that Athens would be named to host the 1996 Olympic Games, and that as a result, the stocks would soar in value. He had hoped to get himself half a million dollars for his retirement fund. When Athens was not named as host and the stock prices fell, his fraud became a sort of Ponzi scheme covering up his victimizing of banks and bank customers.

The scheme, in count one, was executed in July 1990 when Antonakopoulos caused the NBG wrongly to advance a loan of $50,000 in the name of Michael Mavris, a relative of Antonakopoulos who

lived in California. Antonakopoulos actually deposited the loan proceeds into an account that he had opened in the name of his brother Nikolaos, and not Michael Mavris. These funds were used to purchase stocks on the ASE. Neither Nikolaos nor Marvis was aware of these machinations.

From November 7, 1990 to November 9, 1990, the defendant caused NBG to wrongly advance $190,000 in the name of his brother, Nikolaos (count two). Antonakopoulos deposited the funds in the account he opened in his brother's name. The funds were used in part to pay off the previous loan then in default. On November 29, 1990, Antonakopoulos created a loan for $170,000 from MBT to the name of Nondas Lagonakis, using Lagonakis's name without his permission or knowledge. The proceeds from this loan were used to pay off an earlier loan the defendant had obtained by fraud and to continue to buy stocks on the ASE. Although the $170,000 loan was not charged in the indictment, evidence of it was admitted by the district court at trial under Fed. R. Evid. 404(b).

In July 1991, in an effort to cover up his previous fraud by paying off those loans, Antonakopoulos embezzled $100,000 from the account of an MBT customer, Maurice Frances, without Frances's knowledge or permission (count three). Antonakopoulos was able to hide this transaction from Frances because he arranged for Frances's monthly statements to be held at MBT, and not sent directly to Frances in Greece.

-4-

After eight days of trial, the jury convicted the defendant on counts two and three and deadlocked on count one.

The Pre Sentence Report

Applying the November 1, 1990 Sentencing Guidelines Manual, the Pre-Sentence Report (PSR) calculated Antonakopoulos's offense level alternatively under the embezzlement and theft guideline, U.S.S.G. § 2B1.1, which has a base offense level of 4, and under the fraud guideline, U.S.S.G. § 2F1.1, which has a base offense level of 6. Under both, if the loss exceeds a certain amount, the guidelines <u>required</u> an upward adjustment.[1] The PSR concluded that under either guideline the amount of loss was more than $350,000, but less than $500,000. In calculating loss, the PSR found that the convictions on counts two and three meant the defendant was responsible for the loss resulting from the $190,000 Nikolaos Antonakopoulos loan in November 1990, and the embezzlement of $100,000 from the account of Maurice Frances in July 1991. This $290,000 loss figure was coupled with the loss associated with other fraudulent loans made by the defendant; those loans met the relevant conduct definition because they were "part of the same course of conduct and have been proven by a preponderance of the evidence."[2] U.S.S.G. § 1B1.3(a)(1). The PSR added the outstanding

_____

[1]Under U.S.S.G. § 2B1.1, the amount was $100; under U.S.S.G. § 2F1.1, the amount was $5,000.

[2]The loans outlined in the PSR as relevant conduct included a May 31, 1990 loan to Nikolaos in the amount of $47,000; three loans

-5-

balance of each of those loans and determined that the total loss was $435,600. This calculation of loss enhanced the defendant's sentence (a) by 11 levels under U.S.S.G. § 2B1.1 and (b) by 9 levels under U.S.S.G. § 2F1.1. This produced a total offense level of 15 under either guideline, subject to further enhancements. In fact the PSR may have understated the loss because it considered only the outstanding loan balances. Cf. United States v. Walker, 234 F.3d 780 (1st Cir. 2000).

The PSR also recommended enhancing Antonakopoulos's offense level by a total of six additional levels, including two levels for more than minimal planning, under U.S.S.G. § 2F1.1(b)(2) or 2B1.1(b)(5); two levels for obstruction of justice, under U.S.S.G. § 3C1.1; and two levels for role in the offense, under U.S.S.G. § 3B1.3. The PSR concluded that Antonakopoulos's total offense level under either the fraud or embezzlement guideline was 21, his criminal history category was I, and his guideline sentencing range was 37 to 46 months' imprisonment.

---

to Nondas Lagonakis in the amounts of $100,000, $170,000, and $85,000, issued on June 27, 1990, November 29, 1990, and May 10, 1991 respectively; and a loan in the amount of $50,000 to Michael Mavris. The only relevant conduct considered by the district court in calculating loss was the $170,000 loan to Lagonakis. While not prohibited from considering the amount of the Mavris loan, on which there was acquittal, the court declined to do so in the calculation of loss.

<u>Court's Sentencing</u>

The district court calculated the defendant's guideline range under U.S.S.G. § 2B1.1, finding that the defendant's crimes were most analogous to embezzlement. As for calculation of loss, the court considered only what it deemed to be the three transactions fully developed at trial: the $190,000 loan to Nikolaos in November of 1990, the $170,000 loan to Lagonakis in November of 1990,[3] and the $100,000 embezzlement from Frances's account. These produced a total loss of $460,000. With the exception of the $170,000 loan to Lagonakis, the district court did not consider the other "relevant conduct" in its calculation. Had it done so, the loss amount would have been greater and, most likely, the sentence would have been greater.

The district court rejected the defendant's request to reduce the amount of loss based on any repayments made by the defendant on these loans, relying on <u>Walker</u>, 234 F.3d at 783-84. Based on loss between $350,000 and $500,000, the district court enhanced the defendant's base offense level from 4 to 15, as the PSR recommended.

The district court declined the government's request to enhance the defendant's sentence for obstruction of justice. The other two enhancements -- for more than minimal planning and for

---

[3]The defendant did not object to the characterization of this loan as relevant conduct under U.S.S.G. § 1B1.3(a)(1).

role in the offense -- were not directly addressed by the court at the sentencing hearing, but they were clearly included in the court's final determination of the offense level, which was 19.

The court did not grant the defendant's motion for two downward departures: the first based on post-offense rehabilitation and the second based on family circumstances. As to the first, the defendant argued that since his illegal conduct he "has been unblemished and free from incident," and cited his exemplary work record, his constant and committed caring for his son, and his active participation in his church. The district court replied, "the first one [based on post-offense rehabilitation] I don't think is a difficult one. Presentence rehabilitation wouldn't even be an issue in this case had it not taken so long to bring this case to trial from the time of the original offense." The court's conclusion on this point was made irrespective of the fact that this is a rare ground of departure under the guidelines.[4]

Although not presented to us as part of the defendant's Booker argument, our own review of the record shows that the

---

[4]The court continued by stating:

But putting that observation aside, I think United States v. Craven [239 F.3d 91 (1st Cir. 2001)] more or less rules out a departure on that ground in this case. . . . [T]his is a hen's teeth rare departure and . . . generally . . . the Court['s consideration] should be directed to . . . whether rehabilitation began pre arrest or post arrest. Where it is post arrest it would be [a] hen's teeth rare circumstance, the award of a departure on that ground.

defendant also asked for a downward departure based on family circumstances under U.S.S.G. § 5K2.0 -- he argued that he was an "irreplaceable" care taker for his adult son who suffered serious and permanent brain injuries as the result of a 1993 automobile accident.  The court considered and rejected the request, stating:

> What is difficult about this case is obviously the situation with the defendant's son, which anyone would have a compassionate reaction to. And I don't understand the government not to have that reaction.
> I am however persuaded, by Mr. Wild's memorandum that there are adequate alternative means of care.  Therefore, I do not believe that the very high standard established by [United States v. Pereira, 272 F.3d 76 (1st Cir. 2001)] permits a departure for that ground in this case either.
> I do think the situation of the son is an adequate ground actually to impose a sentence at the minimum that the guideline range otherwise calls for, which by my calculation I believe to be 30 to 37 months.

The court correctly determined that the appropriate offense level was 19, with a criminal history category of I, resulting in a guideline range of 30 to 37 months.  The court sentenced the defendant to 30 months' imprisonment, the bottom end of the range.

In an entirely different calculation, one which does not affect the defendant's sentence of imprisonment, the district court ordered restitution in the amount of $165,000 to be paid to MBT and $185,000 to be paid to Lagonakis as mandated by U.S.S.G. § 5E1.1.

**II.**

Effect Of Unpreserved Booker Error on Sentences

Oral argument in this case was heard on February 8, 2005 after the Supreme Court decided United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). We address for the first time this circuit's standards for unpreserved claims of Booker error in cases on direct appeal.[5]

To summarize our position at the outset, we intend to apply, in accordance with Justice Breyer's admonition, conventional plain-error doctrine where a Booker error exists but has not been preserved. See id. at 769; United States v. Olano, 507 U.S. 725, 731-32 (1993). The Booker error is that the defendant's Guidelines sentence was imposed under a mandatory system. The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system. A mandatory minimum sentence imposed as required by a statute based on facts found by a jury or admitted by a defendant is not a candidate for Booker error. The first two Olano requirements -- that an error exists and that it is plain at the time of appeal -- are satisfied whenever the district court treated

_____

[5]This opinion is, of course, without prejudice to petitions for rehearing and rehearing en banc.

the Guidelines as mandatory at the time of sentencing. But to meet the other two requirements -- that this error affected defendant's substantial rights and would impair confidence in the justice of the proceedings -- we think that ordinarily the defendant must point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new "advisory Guidelines" Booker regime. We follow the more flexible standard for plain error articulated in United States v. Dominguez Benitez, 542 U.S. ___, 124 S. Ct. 2333 (2004). We engage in case by case review and we reject certain automatic reversal rules.

We explain our position, starting by describing what we regard as the Booker error, and what is an "unpreserved" Booker error, and then address in turn the content of plain-error review in a Booker situation, the standard to be used at the third and fourth prongs, and our rejection of automatic reversal rules.

**A.**

Booker reaffirmed the principle of Apprendi v. New Jersey, 530 U.S. 466 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt," but did so only insofar as the sentence resulted from a mandatory system imposing binding

-11-

requirements on sentencing judges.  Booker, 125 S. Ct. at 756.

Justice Stevens' opinion for the Court stressed that it was the

mandatory nature of the Guidelines which raised constitutional

concerns:

> If the Guidelines as currently written could
> be read as merely advisory provisions that
> recommended, rather than required, the
> selection of particular sentences in response
> to differing sets of facts, their use would
> not implicate the Sixth Amendment. . . .
> The Guidelines as written, however, are not
> advisory; they are mandatory and binding on
> all judges.

Id. at 750.  And Justice Breyer's opinion stated:

> [W]ithout this provision--namely the provision
> that makes the relevant sentencing rules . . .
> mandatory and impose[s] binding requirement on
> all sentencing judges--the statute falls
> outside the scope of Apprendi's requirement.

Id. at 764 (internal quotation marks omitted).

The Court, as part of its remedy, struck two provisions

from the Sentencing Reform Act.  Id. at 765.  It excised from the

statute the provision which had mandated that judges sentence

within the Guidelines range.  See 18 U.S.C. § 3553(b)(1) ("[T]he

court shall impose a sentence of the kind, and within the range,

referred to in subsection (a)(4) [which in turn referred to the

Guidelines] . . . .").  It also excised the provision which gave

the courts of appeals de novo review over certain aspects of

sentencing.  18 U.S.C. § 3742(e).  The remainder of the Sentencing

-12-

Reform Act is intact and the Guidelines must be considered by the district courts in sentencing.  Booker, 125 S. Ct. at 767.

Justice Breyer's opinion in Booker directly addressed the issue of how the courts of appeals should address unpreserved claims of Booker error, holding:  "[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."  Id. at 769.  Under the post-Booker approach, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," subject to review by the courts of appeals for "unreasonableness."  Id. at 767.

**B.**

Forfeited Error

We briefly address what a "forfeited" error is as to Booker, so as to raise plain-error review.

The error under Booker is, as we have said, that the defendant was sentenced under a mandatory Guidelines system.  A variety of arguments led the Supreme Court to that conclusion, wending from Apprendi, through Ring v. Arizona, 536 U.S. 584 (2002) and Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), to Booker.  The argument that a Booker error occurred is preserved if the defendant below argued Apprendi or Blakely error or that the Guidelines were unconstitutional.  This is broader in scope than

-13-

the argument that the mandatory Guidelines system was unconstitutional. Generally, there is no <u>Booker</u> argument if the sentence imposed was a statutory mandatory minimum sentence resulting from facts found by a jury or admitted by the defendant.[6]

Here the defendant agrees that the <u>Booker</u> issue was not preserved, so at most he is entitled to plain-error review. The government, for its part, concedes that the <u>Booker</u> issue was forfeited and not waived.[7] Like many other choices criminal defendants make, there may be some risks to defendants in seeking <u>Booker</u> remands.[8]

<u>Content of Plain-Error Review</u>

Under <u>Olano</u>, for the court of appeals to notice and correct an error not objected to in the district court, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" <u>Olano</u>, 507 U.S. at 732. If those three factors are all

---

[6]We need not address here substantial assistance departures below mandatory minimum sentences, 18 U.S.C. § 3553(e), or safety valve departures, 18 U.S.C. § 3553(f), and what effect if any <u>Booker</u> had on them. <u>See</u> <u>United States</u> v. <u>Crosby</u>, No. 03-1675, 2005 WL 240916, at *4 n.8 (2d Cir. Feb. 2, 2005).

[7]"[F]orfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." <u>Olano</u>, 507 U.S. at 733 (internal quotation marks and citation omitted).

[8]In traditional remands for new trials or for resentencing made at defendant's behest, a judge may at times impose a higher sentence under the Guidelines in effect at the time of the original sentencing. We do not address what constraints may exist on the resentencing judge.

-14-

met, the court of appeals then has discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotation marks and alteration omitted). Olano also makes it clear that under plain-error analysis "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." Id. at 734.

The first two prongs of the Olano test as to Booker error are satisfied whenever defendant's Guidelines sentence was imposed under a mandatory Guidelines system. There was "error" and it was "plain" at least at the time of appellate consideration. See Johnson v. United States, 520 U.S. 461, 468 (1997). So far, all circuits have reached the same conclusion.

The more significant questions arise as to application of the third and fourth prongs to unpreserved Booker claims. In Olano, the court gave some definition to the phrase "affecting substantial rights" in the third prong by requiring a defendant to make a showing of prejudice. Olano, 507 U.S. at 735. The Olano court stressed that "[n]ormally . . . the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong" of the plain-error test. Id.

Choosing Among Third Prong Plain-Error Standards

The Supreme Court has used different formulations, varying with context, as to the content of the defendant's burden

-15-

to show his "substantial rights" have been affected. Clearly, the prejudice alleged from the mandatory Guidelines system must relate to some degree of likelihood of the error having affected his sentence. The Supreme Court has articulated at least "four assertedly different standards of probability relating to the assessment of whether the outcome of trial would have been different if error had not occurred." Dominguez Benitez, 542 U.S. ___, 124 S. Ct. at 2342 (Scalia, J., concurring) (emphasis in original). This poses the question of which is the most appropriate standard to apply to Booker errors.

A Booker error strikes us as qualitatively different from an inquiry into the likely effect of a trial error on a verdict of conviction. The different articulated standards for prejudice which Justice Scalia cited all involve trial error: the question was what degree of effect was required on the outcome of a verdict of guilt. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (assessing prejudice standard for overturning conviction based on trial error on collateral review); Strickland v. Washington, 466 U.S. 668, 694 (1984) (assessing prejudice standard for overturning conviction based on ineffective assistance of counsel claims); United States v. Agurs, 427 U.S. 97, 111-13 (1976) (assessing prejudice standard for overturning convictions based on Brady violation claims); Chapman v. California, 386 U.S. 18, 24 (1967) (assessing prejudice standard for overturning conviction on direct

-16-

review for constitutional errors). On trial error claims, because there is a record of all evidence introduced (or excluded) at trial, it is often easier to determine whether there was any likely effect on the verdict of guilt, than it is to predict the effect here of a possible new and more lenient sentence under the Booker regime.

In claims of sentencing error in non-capital cases, the Supreme Court has addressed the question of plain-error review, but only as to the fourth Olano prong. In United States v. Cotton, 535 U.S. 625, 631-32 (2002), the Court applied plain-error analysis to an Apprendi error. The Apprendi attack was on an enhanced statutory maximum[9] based on drug quantity which was not specified in the indictment. Cotton reversed the court of appeals ruling which had vacated the sentence and remanded for resentencing. Id. at 634. Cotton did not address whether the defendant's substantial rights were affected. It skipped to the fourth prong and said the error "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" where the evidence as to quantity of drugs was overwhelming. Id. at 632-33. Cotton does not itself address the third prong of the plain-error test.

---

[9]Cotton, however, can also be viewed as closer in category to claims that due to a trial error the verdict of guilt should be vacated. It is relatively easy, as in Cotton, to evaluate whether the presented evidence of drug quantity was overwhelming, regardless of whether it was for purposes of verdict or sentencing. In Cotton it was clear no other outcome was possible and so the fourth prong of Olano could not be met.

-17-

For Booker purposes, the Supreme Court's most recent articulation of the third prong of the plain error test, in Dominguez Benitez, 124 S. Ct. at 2333, strikes us as most apt. The Court extended, to an unpreserved claim of a Rule 11 violation, the general tethering of the prejudice requirement to an effect on outcome. Id. at 2340. The Court adopted a standard that:

> [A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.

Id. (internal quotation marks omitted). Dominguez Benitez also held that "[t]he reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." Id. at 2340 n.9.

The Court in Dominguez Benitez formulated its standard by noting the contrast between the Rule 11 problem it addressed and the trial error claims presented in Strickland, supra, and Brady v. Maryland, 373 U.S. 83 (1963). Both Strickland and Brady claims, inter alia, may be presented in post-conviction proceedings, at which evidence may be taken. By contrast, the defendant presenting a Rule 11 claim will rarely, if ever, be able to obtain relief in

-18-

post-conviction proceedings. <u>Dominguez Benitez</u>, 124 S. Ct. at 2340 n.9. Without today deciding the issue of whether <u>Booker</u> may be raised in post-conviction relief, the <u>Dominguez Benitez</u> reasoning seems more apt here.

**C.**

<u>Rejection of Automatic Plain-Error Rules</u>

We need not discuss the exact relationship between the "reasonable probability of a different outcome" third prong standard of <u>Dominguez Benitez</u> and <u>Olano</u>'s fourth prong. But we reject two per se arguments, whether made under the third or fourth prong. We reject a per se remand rule solely on the basis that a defendant's sentence was enhanced by judicial fact finding beyond that authorized by facts found by the jury or admitted by the defendant (a <u>Blakely</u> error), and we reject a per se remand rule solely on the basis that the Guidelines are no longer mandatory.

<u>Blakely Error</u>

For several reasons, we reject the view that a <u>Blakely</u> error automatically requires a <u>Booker</u> remand. This is a necessary consequence of our view of the nature of the <u>Booker</u> error. At least two circuits view the nature of the error as we do. <u>See</u> <u>United States</u> v. <u>Rodriguez</u>, No. 04-12676, 2005 WL 272952 (11th Cir. Feb. 4, 2005); <u>United States</u> v. <u>Crosby</u>, No. 03-1675, 2005 WL 240916 (2d Cir. Feb. 2, 2005). As Judge Newman said in <u>Crosby</u>: "As a result of the Remedy Opinion in <u>Booker</u>/<u>Fanfan</u>, . . . the maximum

-19-

lawful sentence is the statutory maximum sentence, and because judicial fact-finding under advisory guidelines cannot increase that lawful maximum, judicial fact-finding now encounters no Sixth Amendment difficulties." 2005 WL 240416, at *3 n.6.

It may be that other circuits view this differently. Earlier, of course, under <u>Blakely</u>, the possible error was thought to be that the judge, based on facts found by him, had increased the sentence beyond that authorized solely by the facts found by the jury or admitted by the defendant. Some circuits may have found such situations sufficient unto themselves to constitute <u>Booker</u> error and to warrant remand under <u>Booker</u>. <u>See, e.g.</u>, <u>United States</u> v. <u>Milan</u>, Nos. 02-6245/6302, 2005 WL 309934 (6th Cir. Feb. 10, 2005); <u>United States</u> v. <u>Oliver</u>, No. 03-2126, 2005 WL 233779 (6th Cir. Feb. 2, 2005); <u>United States</u> v. <u>Hughes</u>, No. 03-4172, 2005 WL 147059 (4th Cir. Jan 24, 2005).[10] That situation <u>standing alone</u> -- that the judge found additional facts which raised the sentence authorized solely by the jury verdict or guilty plea -- in our view

_____

[10]An argument has been made in <u>United States</u> v. <u>Milan</u>, Nos. 02-6245/6302, 2005 WL 309934, at *7 (6th Cir. Feb. 10, 2005), that because the Supreme Court "remanded Booker's case for resentencing," the Court must have decided "that the error in his case was reversible, i.e., was not harmless and affected Booker's substantial rights." <u>Id.</u> We do not think such an inference can be made from <u>Booker</u>'s remand. There were only two questions on which the Supreme Court granted certiorari, and neither dealt with the circuit court's decision to remand the case for resentencing. <u>Booker</u>, 125 S. Ct. at 747 n.1. Further, the circuit court had remanded, without discussing plain-error review, because the <u>government</u> had waived any such argument. <u>Booker</u> v. <u>United States</u>, 375 F.3d 508, 515 (7th Cir. 2004).

-20-

is insufficient to meet the third and fourth <u>Olano</u> prongs on plain-error review.  We explain why.

It is far from necessarily true, as a per se remand rule assumes, that a judge who found the facts underlying an enhanced sentence would have reached a different result under a post-<u>Booker</u> regime.  In these situations a judge's factual findings, unless they were found to be clearly erroneous, are far more likely than not to be the same if the case were remanded.  The fact that the judge initially did the fact finding on a certain factor is surely a different matter than what the judge would have done with that factor if the Guidelines were not mandatory.  The use of judicial fact finding, then, ordinarily cannot alone meet the "reasonable probability" standard of the third <u>Olano</u> prong.

A second reason for rejecting such an automatic plain-error rule in <u>Blakely</u> situations is that there is nothing inherently unreliable about judicial fact finding that raised a sentence beyond that authorized solely by the jury verdict or guilty plea.  Under <u>Booker</u>, a judge may do such fact finding in determining the Guidelines range.  Nothing in <u>Booker</u> requires submission of such facts to a jury so long as the Guidelines are not mandatory.  That judicial fact finding was used certainly, in

-21-

our view, cannot itself mean that the fourth prong of <u>Olano</u> is met; more is needed.[11]

Further, to find plain error automatically in <u>Blakely</u> situations would be inconsistent with pre-<u>Booker</u> law. Even before <u>Booker</u>, and after <u>Blakely</u>, this circuit had rejected any such automatic rule of reversal and remand for resentencing when a judge engaged in fact finding that raised the defendant's sentence beyond that authorized by the jury verdict or guilty plea. <u>See</u> <u>United States</u> v. <u>Morgan</u>, 384 F.3d 1 (1st Cir. 2004). So did the Supreme Court in <u>Cotton</u>, 535 U.S. at 634.

We also do not adopt the contrary per se rule that a <u>Blakely</u> type situation cannot meet the standard of a reasonable probability of a different sentence. The burden is on the defendant to convince us on specific facts.

<u>Non-Mandatory Guidelines</u>

The plain-error standard is not met by a simple assertion that the defendant was sentenced under a mandatory Guidelines

---

[11]Nor is this structural error. In certain structural error cases, those which "undermin[e] the fairness of a criminal proceeding as a whole," errors can be corrected regardless of an individualized showing of prejudice to the defendant. <u>Dominguez Benitez</u>, 124 S. Ct. at 2339; <u>Olano</u>, 507 U.S. at 735; <u>see</u> <u>Arizona</u> v. <u>Fulminante</u>, 499 U.S. 279, 309-310 (1991) (providing examples of structural error). Because sentencing under a mandatory system is not an error that "undermines the fairness of a criminal proceeding as a whole," as we discuss above, a <u>Booker</u> type error is not a structural error; the defendant must convince us of prejudice. Indeed, had the majority in <u>Booker</u> thought there was structural error, it would have said so.

system, and so is entitled to remand.  In our view, one cannot possibly say that all sentences imposed before Booker threatened the fairness, integrity, or public reputation of judicial proceedings, or undermined our confidence in the outcome of the sentence, simply because the Guidelines were mandatory.  As to the "reasonable probability" test under the third prong, it is not met by the mere assertion that the court might have given the defendant a more favorable sentence.

**D.**

Booker Remand Considerations

It would be a fool's errand for us to try now to describe all situations in which remand may be warranted under plain-error review.  We offer a few observations.

First, where in a pre-Booker world we would have remanded for procedural[12] or substantive error in the application of the Guidelines, that would normally lead to a Booker remand.  Where, as in pre-Booker cases, we engage in plain-error review and find it clear that the district court has made a sentencing error under the Guidelines, the correction of which ordinarily would have led to a lower sentence in the pre-Booker era, there is a strong argument for remand.  See, e.g., United States v. Sedoma, 332 F.3d 20, 29

---

[12]The Ninth Circuit's decision in Ameline may fall into this category because the sentencing court violated pre-Booker circuit precedent, but we are uncertain.  See United States v. Ameline, No. 02-30326, 2005 WL 350811, at *7-*8 (9th Cir. Feb. 10, 2005).

-23-

(1st Cir. 2003) (resentencing granted in plain-error review of a grouping error which led the district court to increase defendant's sentence by 58 months).  This means that in some cases we will continue to review pre-<u>Booker</u> type claims of Guideline error where it is plausible that the error committed affected the sentence. <u>Accord</u> <u>United States</u> v. <u>Rodriguez</u>, No. 04-12676, 2005 WL 272952 (11th Cir. Feb. 4, 2005).  There may of course be other errors, whether based on sentencing or not, that could also lead to a remand, such as when the government is in breach of a plea agreement.

Second, as <u>Crosby</u> points out, there is also the category of claims about either aggravating or mitigating circumstances that existed at the time of the original sentence but which were not available for consideration under the mandatory Guidelines regime. <u>Crosby</u>, 2005 WL 240916, at *11.

Finally, history shows that the mandatory nature of the Guidelines has produced particular results which led trial judges to express that the sentences imposed were unjust, grossly unfair, or disproportionate to the crime committed, and the judges would otherwise have sentenced differently. <u>See, e.g.</u>, <u>United States</u> v. <u>Jackson</u>, 30 F.3d 199, 203 (1st Cir. 1994); <u>United States</u> v. <u>Studley</u>, 907 F.2d 254, 259-60 (1st Cir. 1990); <u>see also</u> <u>United States</u> v. <u>You</u>; 382 F.3d 958, 967 (9th Cir. 2004); <u>United States</u> v. <u>Thompson</u>, 367 F.3d 1045, 1046 (8th Cir. 2004); <u>United States</u> v.

<u>Thames</u>, 214 F.3d 608, 611 (5th Cir. 2000); <u>United States</u> v. <u>Vizcaino</u>, 202 F.3d 345, 347 (D.C. Cir. 2000).  Where the district judge has said as much about a Guidelines sentence, that is a powerful argument for remand.  If the resulting sentence after remand is itself unreasonable, the government can appeal.  By like token, if the district judge has said at sentencing that he would have reached the same result regardless of the mandatory nature of the Guidelines, that is a powerful argument against remand.

A district judge's expression that he would have sentenced a defendant more favorably if the Guidelines were not mandatory is certainly not the only vehicle for a remand.  The existence of prejudice should not turn on how vocal the district judge was.  Even in cases where the judge was silent, there may be cases in which the appellate panel is convinced by the defendant based on the facts of the case that the sentence would, with reasonable probability, have been different such that both the third and fourth prongs have been met, and remand will be warranted.

Our sister circuits  have taken a variety of positions on plain error review of <u>Booker</u> errors, some of which differ from ours.  <u>Compare</u> <u>United States</u> v. <u>Crosby</u>, No. 03-1675, 2005 WL 240916 (2d Cir. Feb. 2, 2005) (remanding all cases of claimed <u>Booker</u> error to district court to decide <u>whether</u> to resentence and to do so if they wish); <u>with</u> <u>United States</u> v. <u>Ameline</u>, No. 02-30326, 2005 WL

350811 (9th Cir. Feb. 10, 2005) (finding plain error when judicial fact finding raised sentence above that authorized solely by jury verdict); United States v. Oliver, No. 03-2126, 2005 WL 233779 (6th Cir. Feb. 2, 2005) (same); United States v. Hughes, No. 03-4172, 2005 WL 147059 (4th Cir. Jan 24, 2005) (same); and with United States v. Bruce, No. 03-3110, 2005 WL 241254 (6th Cir. Feb. 3, 2005) (declining to exercise discretion to notice claim of plain error on fourth prong of Olano, despite judicial fact finding that raised defendant's sentence above that authorized solely by facts admitted in guilty plea, because evidentiary support for district court's upward departure was sufficiently "overwhelming"); and with United States v. Rodriguez, No. 04-12676, 2005 WL 272952 (11th Cir. Feb. 4, 2005) (finding no plain error under third prong of Olano when defendant merely claimed that under advisory system, sentence might have been lower if enhancement issue had gone to jury).

There is no reason for us to comment further or to attempt to distinguish those cases. The situation created by Booker, although subject to familiar rules as to preserved and unpreserved claims, is an unusual one and transitory in nature. There may well be a range of entirely reasonable choices as to plain error review, which vary with the circumstances of the circuit.

**III.**

Application of These Standards to Antonakopoulos

Antonakopoulos's primary argument is a <u>Blakely</u> type argument that <u>Booker</u> automatically requires resentencing because the court, rather than the jury, made the following findings to enhance his sentence beyond that authorized by the jury verdict alone: (1) the amount of loss, (2) his role in the offense, and (3) the offense involved more than minimal planning. We have just rejected the premise of this argument.

If the district court had committed clear error in those three findings on which enhancements were based, that would provide a basis for a remand. The court did not err. We take Antonakopoulos to argue that independent of the order of restitution, the district court erred in the calculation as to the amount of loss for purposes of determining the applicable Guidelines range. Factual findings as to the amount of loss by the district court are reviewed for clear error; the appropriate method for calculating loss amounts under U.S.S.G. § 2B1.1 is a question of law and is reviewed de novo. <u>United States</u> v. <u>Walker</u>, 234 F.3d 780, 783 (1st Cir. 2000). Antonakopoulos preserved this issue.

The defendant argues that the district court erred by failing (a) to credit the repayments that he claims were made to MBT and other victims and (b) to recognize that the loss attributable to the Lagonakis loan was actually attributable to the

-27-

"vagaries of the stock market, not any actions of Mr. Antonakopoulos." These arguments are without merit. Nor is there any merit to a suggestion that there was no factual basis for his enhancements based on role in the offense and more than minimal planning.

At sentencing, the district court calculated the loss by adding the two loans established at trial -- the $190,000 loan in the name of Nicklas Antonakopoulos and the $170,000 loan in the name of Nondas Lagonakis -- and the $100,000 embezzled from the MBT account of Maurice Frances, which MBT ultimately paid to Maurice Frances. The defendant does not challenge the amount of the loans and the use of U.S.S.G. § 2B1.1. His argument is that the district court did not consider the alleged repayments he made. The court would have erred if it had done what Antonakopoulos requested. See Walker, 234 F.3d at 783 (In sentencing under U.S.S.G. § 2B1.1, the "sentencing court properly calculated loss by summing the amounts of the [transactions] without regard for any repayments made [by the defendant] at other times."). The loss calculation is determined by the risk to which the bank was exposed at the time of the embezzlement without consideration of any intention or even the actual act of repayment of the funds. Id. at 783-84.

The district court gave the defendant several breaks at sentencing. It chose not to consider, although it easily could have, loss figures from relevant conduct which would have produced

-28-

a sentencing range of 33 to 41 months.  Instead, the court adhered to a lower loss figure, which gave a range of 30 to 37 months, and then gave the lowest point on that range -- a sentence of 30 months.

There is another type of <u>Booker</u> argument available but which Antonakopoulos has not made: that there is a reasonable probability that the district court, freed of mandatory guidelines, would have given him a lower sentence.  Because this case establishes the standard for such a claim, we think it fairer to give Antonakopoulos and his counsel time to consider whether he wishes to advance the argument.  If so, the prosecution must have a chance to respond.

At sentencing the defendant sought a downward departure based in part on the fact that his son was brain damaged and he had been his son's caretaker.  The court determined that others can also provide care, and indeed have done so during his imprisonment.  The main grounds on which he sought remand, under <u>Blakely</u>, are now gone.  This ground, that of family circumstances, is still open and is not frivolous.

If defendant wishes to pursue this remaining type of <u>Booker</u> resentencing claim, he should advise this court and submit a supplemental brief within ten days, in compliance with our rules, not to exceed 15 pages.  The brief should address the standards articulated in the opinion.  The government shall have five days to

file a response of no greater length.  If the defendant does not make such a supplemental filing within the time allotted, he will be deemed to have waived this option and judgment shall enter accordingly.

**IV.**

Restitution Order

At the time of the conduct in question, U.S.S.G. § 5E1.1(a)(1) stated that the court "shall . . . [e]nter a restitution order if such order is authorized under 18 U.S.C. §§ 3663-3664." U.S.S.G. § 5E1.1(a)(1) (emphasis added). 18 U.S.C. § 3663 states: "The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to any victim of such offense . . . ." 18 U.S.C. § 3663. An order of restitution is a separate calculation from the calculation of loss, and the amount of restitution has no bearing on the defendant's Guidelines range or term of imprisonment.[13]

We review restitution orders for abuse of discretion and the subsidiary findings of fact for clear error. United States v. Cutter, 313 F.3d 1, 6 (1st Cir. 2002).  If the appellant's challenge is based on a legal conclusion, we review that conclusion de novo.  Id.  Where the defendant has failed to object below, as

---

[13]The defendant presents no serious claim of Booker error as to restitution.

is the case here, we review only for plain error.  United States v. Theodore, 354 F.3d 1, 8 (1st Cir. 2003).

The district court awarded restitution in the amount of $350,000.  The restitution amount included $165,000 to MBT and $185,000 to Nondas Lagonakis.  The government concedes error as to $250,000, and argues that the appropriate amount of restitution is $100,000 to MBT.[14]  This amount represents the money MBT paid to Frances to replace the $100,000 Antonakopoulos embezzled from Frances's account and on which Antonakopoulos was convicted under count three.

Not content with the government's concession, the defendant argues that this reduced amount of $100,000 is plain error because the court, in ordering any restitution to MBT for the money embezzled from the account of Maurice Frances, failed to take into account the payments previously made to Frances by the defendant.  A simple principle disposes of the argument.  The loss was to MBT; any repayment Antonakopoulos relies on was to Frances, not MBT.  Defendant's complicated machinations in the fraud have come back to bite him.  There was no error, much less plain error.

---

[14]The calculation of restitution is governed by statute, and the government concedes that at the time the charged conduct occurred, there was no statutory basis upon which the district court could have granted restitution to MBT for the additional $65,000 or to Lagonakis for $185,000.  We accept the government's concession without addressing the merits of its argument.

**V.**

We **affirm** the conviction and reject certain challenges to the sentence, as made. We **order** a reduction in the amount of restitution to $100,000 to MBT. We retain jurisdiction for such further proceedings as are described herein.