# United States Court of Appeals
## For the First Circuit

No. 03-2182

UNITED STATES,

Appellee,

v.

HÉCTOR FLORES-SEDA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Lipez, and Howard, Circuit Judges.

Stephen Hrones, with whom Hrones & Garrity was on brief, for
appellant.
German A. Rieckehoff, Assistant United States Attorney, with
whom H.S. Garcia, United States Attorney, and Nelson Pérez-Sosa,
Assistant United States Attorney, were on brief, for appellee.

September 8, 2005

**LIPEZ**, <u>Circuit Judge</u>.  Following a jury conviction on one count of conspiring to defraud the United States, one count of insurance fraud, and six counts of mail fraud, the district court sentenced Héctor Flores-Seda ("Flores") to 51 months in prison under the then-mandatory United States Sentencing Guidelines. Flores does not challenge his conviction on appeal.  Rather, he assigns error to the district court's calculation of his sentence and asserts that, in any event, he is entitled to resentencing in light of <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005).  We reject both claims and affirm his sentence.

## I.

The sentencing issues on appeal do not require us to recount in detail the events that led to Flores's conviction.  We therefore provide only a brief outline of the relevant history.

At all times relevant to this case, Flores owned and operated an automobile repair shop called "Taller El Poder" in Vega Baja, Puerto Rico.  Between October 1995 and June 2001, Flores participated in a fraudulent car insurance scheme wherein he and his co-conspirators staged car crashes and had police officers, also participants in the scheme, prepare false police reports documenting the accidents.  Through his repair shop, Flores would then prepare inflated estimates for insurance claims based on the staged accidents, claiming both the damages sustained in the accidents and additional damage that did not, in fact, exist.  This

-2-

scheme was lucrative. At sentencing, an attorney for a consortium of defrauded insurance companies testified that the total loss to the insurance companies was more than $4 million, and that just the claims attributable to Flores, his shop, and his wife totaled more than $600,000.

On July 9, 2002, a grand jury returned a multi-count indictment against Flores and seventeen other individuals, including one of Flores's employees, an insurance salesman, an insurance claims adjustor, and numerous police officers, in connection with the car insurance scheme. Nine of the counts in the indictment implicated Flores: conspiracy to defraud the United States, 18 U.S.C. § 371 (Count One), insurance fraud, 18 U.S.C. § 1033 (Count Two), and mail fraud, 18 U.S.C. § 1341 (Counts Three through Eight and Sixteen). On February 18, 2003, following a ten day trial, the jury convicted Flores on Counts One, Two, Three through Seven, and Sixteen, and acquitted him on Count Eight.

Flores was sentenced on July 22, 2003 under the 1998 edition of the United States Sentencing Guidelines. See U.S.S.G. § 1B1.11(b)(1) (1998) ("If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was

committed.").[1] The district court grouped the counts of conviction together pursuant to U.S.S.G. § 3D1.2(d), and assigned a base offense level of 6. Id. § 2F1.1(a).[2] Over Flores's objections, the court then imposed a 10-level increase based on its finding that the offense involved a loss of more than $500,000, see U.S.S.G. § 2F1.1(b)(1)(k), a 2-level increase based on its finding that the offense involved more than minimal planning, see id. § 2B1.1(4)(a), and a 4-level increase based on its finding that Flores was an organizer or leader of an extensive criminal activity, see U.S.S.G. § 3B1.1(a), for a total offense level of 22. Based on Flores's criminal history category of I, his guideline sentencing range was 41 to 51 months. Flores asked the court to sentence him at the low end of the range on the grounds that he has two minor children and that his co-defendants -- who pled guilty rather than proceeding to trial -- received "a sentence very distant, even to the lower end of this offense level." The government recommended a sentence at the upper end of the range, emphasizing that "as far as we can tell, the defendant is still not repentant." After hearing a victim impact statement by Rafael Barreto, an attorney for the defrauded insurance companies in a

---

[1] All Guidelines citations in this opinion are to the 1998 edition, unless otherwise noted.

[2] Section 2F1.1 "was deleted by consolidation with § 2B1.1 effective November 1, 2001." U.S.S.G. § 2F1.1, historical note (2004).

related civil case, the court sentenced Flores to 51 months in prison, the top of the applicable range, on each count, to run concurrently. The court also imposed a fine of $5,000 and ordered Flores to cooperate with Barreto in the related civil case. This appeal followed.

## II.

On appeal, Flores objects to his sentence on two grounds. First, he assigns error to the district court's finding that the loss from his fraudulent activities was in excess of $500,000. Second, he contends that he is entitled to resentencing in light of Booker. We consider each claim in turn.[3]

### A.        Loss calculation

The Guidelines section applicable to Flores's offense of conviction provides for incremental sentencing increases based on the amount of the loss due to fraud. See U.S.S.G. § 2F1.1. Based on testimony by Barreto, the pre-sentence report estimated the amount of the loss attributable to Flores as being in excess of $500,000, and thus recommended a 10-level increase to Flores's base offense level. See id. § 2F1.1(b)(1)(k).

At sentencing, the court asked Barreto to explain his calculations regarding the "counts and losses attributable to the

---

[3]As we explained in United States v. Antonakopoulos, 399 F.3d 68, 81 (1st Cir. 2005), even post-Booker, "we will continue to review pre-Booker type claims of Guideline error where it is plausible that the error committed affected the sentence."

scheme in which this defendant participated." Barreto testified under oath that

> in the civil complaint that is parallel to the criminal case, the losses sustained by the insurance companies actually surpassing right now over $4 million. Nonetheless, we understand that there might have been a few schemes, a few conspiracies against the insurance companies, and therefore, in order to be just, and in order to be able to sustain or to specify the losses caused by this defendant, what we did was to address only those cases and those claims made that were caused directly by this defendant. We did not include the $4 million because we could not say that all of the claims were all [attributable] directly to the defendant. . . . The $600,000 amount that we provided to the probation officer was the amount that added up all the claims that had to do with Héctor Flores, with Taller El Poder, and [with] his wife. Not necessarily that means that they were in the claims that were included in the indictment. There were other claims not included in the indictment that nonetheless were included in the civil complaint that were attributable to Héctor Flores.

The court asked Barreto to confirm that his testimony was that "the insurance fraud scheme and claims attributable directly to the participation by Mr. Flores, his wife, and Taller El Poder, is over $600,000." Barreto responded that the court was correct.

Flores was then given an opportunity to question Barreto. He declined, stating that "we are in a total state of non-defense, so we cannot argue as to that matter." Flores's only comment on this point was to emphasize that the indictment cited a loss of just $334,529 and that he had been acquitted on one count, which would suggest a lower total. In response, the government informed the court that the amount alleged in the indictment was attributable only to the counts on which Flores was convicted.

-6-

Even if not covered in the indictment, the government asserted that the amounts stated by Barreto "are relevant conduct as to this case." See U.S.S.G. § 1B1.3(a)(2) (defining relevant conduct to include "all acts and omissions . .. that were part of the same course of conduct or common scheme or plan as the offense of conviction").

After hearing Barreto's testimony and arguments from both sides, the court found that the losses stated by Barreto were relevant conduct and "sustain[ed] the finding of the probation officer in the pre-sentence report . . . that this defendant should be sentenced with losses in excess of $500,000 which is less than the $600,000 that the victim has supplied to this court and to the probation officer." On appeal, Flores asserts that this finding was erroneous. We review the district court's loss calculation for clear error. See United States v. Antonakopoulos, 399 F.3d 68, 82 (1st Cir. 2005).

Flores attacks the court's loss calculation on several grounds. He asserts that the government failed to establish a nexus between all of the losses included in Barreto's estimate and the conduct for which he was convicted, that it was in Barreto's interest, because of the pending civil case, to "err on the side of exaggeration," and that Barreto's calculation included some non-fraudulent claims filed by Flores. More broadly, Flores also

contends that "it was not established by a preponderance of the evidence that the loss exceeded $500,000." We reject these claims.

As we have explained, "[d]etermination of actual loss need not be precise; '[t]he court need only make a reasonable estimate of the range of loss, given the available information.'" United States v. Brandon, 17 F.3d 409, 457 (1st Cir. 1994) (quoting U.S.S.G. § 2F1.1 cmt. n.8 (1994)). Here, the court relied on an estimate by a representative of Flores's victims of the losses based on the "insurance fraud scheme and claims attributable directly to the participation by Mr. Flores, his wife, and Taller El Poder." Barreto's testimony that the losses were attributable to Flores's participation in the insurance fraud scheme established that they were relevant conduct for sentencing purposes, and Flores has not offered any evidence to the contrary. See U.S.S.G. § 1B1.3(a)(2) (defining "relevant conduct" to include "all acts . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction").

Nor are we persuaded by Flores's claim that Barreto's estimate was unreliable because he had an incentive to exaggerate the loss or because he included non-fraudulent claims by Flores. Barreto testified, under oath, that the loss specifically attributable to Flores's participation in the insurance fraud scheme was over $600,000. When given the opportunity to question Barreto regarding his estimate, Flores declined. He made no effort

to impeach Barreto's testimony, either by raising the possibility of bias or by questioning him about the inclusion of non-fraudulent claims, nor did he offer an alternative estimate. "A defendant dissatisfied with the sentencing court's quantification of the amount of loss in a particular case must go a long way to demonstrate that the finding is clearly erroneous." United States v. Ranney, 298 F.3d 74, 80 (1st Cir. 2002) (internal quotation marks omitted). In light of Barreto's testimony regarding the estimated loss to the insurance companies and the absence of any evidence from Flores to refute Barreto's calculations, we reject Flores's claim of clear error.

**B.        Booker claim**

In a supplemental brief filed after oral argument in this case, Flores also claims that he is entitled to resentencing in light of United States v. Booker, 125 S. Ct. 738, 756-57 (2005), which held that the Guidelines must be treated as advisory, rather than mandatory. Because Flores failed to preserve his Booker claim in the district court, we review it only for plain error. Antonakopoulos, 399 F.3d at 76. The first two prongs of plain error review are satisfied by the fact that Flores was sentenced under the mandatory Guidelines. See id. at 77.[4] To be entitled to

_____

[4]In his opening brief, filed before the Supreme Court decided Booker, Flores assigned constitutional error to the district court's calculation of his sentence based in part on judicial factfinding -- namely, the court's findings that the scheme involved more than minimal planning, that Flores was a leader or

-9-

resentencing, however, Flores must also "point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' <u>Booker</u> regime." <u>Id.</u> at 75.

Flores argues first that the district court's comments indicate that it "felt the Guidelines required the adjustments that were imposed." The specific comments to which he points are the court's description of various increases to the base offense level as "warranted" or "authorized" by the Guidelines. This argument is easily dismissed. Although the court's comments do reflect the reality that Flores's sentence was shaped by the Guidelines, they in no way indicate that the court would impose a more favorable sentence under the advisory Guidelines.

Flores next asserts that he would have received a lower sentence under the advisory Guidelines because the district court would have been free to consider two mitigating factors: the fact that Flores has two minor children relying on him for financial support, and the fact that many of Flores's co-defendants received substantially lower sentences than he did, thus leading to a

---

organizer, and that the loss exceeded $500,000. We subsequently clarified that the <u>Booker</u> error "is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system." <u>Antonakopoulos</u>, 399 F.3d at 75. Flores's pre-<u>Booker</u> argument regarding judicial factfinding is therefore incorrect.

disparity. Flores brought both of these factors to the district court's attention, asking it to impose a sentence of 41 months, the bottom of the applicable Guidelines range, in the interest of "humanism" and "uniformity." Although the district court did not comment on Flores's children, it responded with regard to the sentencing disparity that "the other co-defendants in this case pled guilty, and negotiated their pleas with the U.S. Attorney, and the Court had that in mind when it sentenced the defendants in this case. So it is very difficult to argue uniformity in this case." The court then sentenced Flores to 51 months in prison, the top of the applicable Guidelines range. Given the court's decision to impose a sentence at the top of the Guidelines after being presented with the only mitigating factors that Flores has identified on appeal, Flores has not established a reasonable probability that the court would impose a more favorable sentence under the advisory Guideline regime. See United States v. Gonzalez-Mercado, 402 F.3d 294, 304 (1st Cir. 2005) ("When, under a mandatory guidelines regime, a sentencing court has elected to sentence the defendant substantially above the bottom of the range, that is a telling indication that the court, if acting under an advisory guidelines regime, would in all likelihood have imposed

-11-

the same sentence.").  He therefore is not entitled to resentencing.[5]

**Affirmed.**

---

[5]In light of this disposition, Flores's claims regarding the sentencing procedures to be used on remand are inapposite.