# United States Court of Appeals
## For the First Circuit

No. 05-1355

UNITED STATES OF AMERICA,

Appellee,

v.

GERMÁN NARVÁEZ-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,

John R. Gibson, Senior Circuit Judge[*],

and Howard, Circuit Judge.

Juan F. Matos-de Juan, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief for appellant.
Judith Vargas, with whom H. S. García, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Senior Appellate Attorney In Charge, and Germán A. Rieckehoff, Assistant United States Attorney, were on brief for appellee.

March 14, 2006

---

[*]Of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON**, **Circuit Judge**.  Germán Narváez-Rosario appeals the judgment of the district court sentencing him to 120 months' imprisonment for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) following a guilty plea.  We affirm.

On February 6, 2004, Narváez-Rosario arrived at the Pan American Dock in San Juan, Puerto Rico, on board the cruise ship M/V Galaxy.  At the dock, inspectors with United States Customs and Border Protection conducted a search of Narváez-Rosario which uncovered 1.94 net kilograms of heroin concealed within the sole of his tennis shoes and inside a pair of lycra shorts worn underneath his pants.  After being advised of his rights and waiving them in writing, Narváez-Rosario was interviewed by a special agent of the Bureau of Immigration and Customs Enforcement.  He told the agent that a Colombian national in Puerto Rico had offered him $8,000 to serve as a drug courier.  The Colombian had instructed Narváez-Rosario to travel onboard the M/V Galaxy to pick up the narcotics in Venezuela, and, upon his return to Puerto Rico, to contact the Colombian for further instructions.

A grand jury of the District of Puerto Rico indicted Narváez-Rosario: Count One charged him with importing greater than one kilogram of heroin into the United States in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2; Count Two charged him with possession with intent to distribute greater than one kilogram of heroin in

violation of 21 U.S.C. 841 (a)(1) and 18 U.S.C. § 2. Narváez-Rosario pled guilty to Count Two in exchange for the government's agreement to dismiss the remaining count.

Under the terms of the plea agreement, the parties stipulated that Narváez-Rosario's sentence would be determined according to the federal sentencing guidelines. Narváez-Rosario stipulated that he was responsible for between one and three kilograms of heroin for a base offense level of 32, and the parties agreed that he would receive a three-level reduction for his acceptance of responsibility. See U.S.S.G. §§ 2D1.1(c)(4), 3E1.1(a)-(b).

The parties also agreed that if Narváez-Rosario met all the requirements of the "safety valve" of Guideline § 5C1.2, he would receive a two-level reduction pursuant to Guideline § 2D1.1(b)(6). The plea agreement provided that if Narváez-Rosario were to qualify for the two-level safety valve reduction, his total offense level would be 27, which, assuming a criminal history category of I,[2] would have carried a sentencing range of between 70 and 87 months. Narváez-Rosario acknowledged in the plea agreement that if he failed to meet all the requirements of the safety valve, he could not be sentenced to less than the 120-month statutory minimum. See 21 U.S.C. § 841 (b)(1)(A)(i). Following a change of plea hearing before a magistrate judge, the district court accepted his guilty

---

[2]The parties made no stipulation as to Narváez-Rosario's criminal history category.

plea.

Although the parties stipulated to an offense level of 27 in the plea agreement, the pre-sentence investigation report calculated an offense level of 29. The report arrived at this offense level using the same sentencing factors as those recited in the plea agreement minus the safety valve benefit. At the sentencing hearing, the probation officer testified that because Narváez-Rosario had more than one criminal history point, her office recommended that the court find him ineligible for a safety valve reduction. See U.S.S.G. § 5C1.2(a)(1) (requiring that the defendant have no more than one criminal history point to qualify for safety valve). Although Narváez-Rosario had not objected to the criminal history calculation in the presentence investigation report, his counsel argued at sentencing that after the United States Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the district court had the discretion to ignore the guidelines' criminal history calculation in determining whether Narváez-Rosario qualified for a safety valve reduction. The district court rejected this argument and concluded that Narváez-Rosario was ineligible for a safety valve reduction. Recognizing the now-advisory nature of the sentencing guidelines and considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Narváez-Rosario to the statutory minimum, 120 months' imprisonment.

On appeal Narváez-Rosario argues that the district court erred in finding him ineligible for the safety valve reduction contemplated in the plea agreement. Because he does not dispute the facts relied upon by the district court in rendering his sentence, we review de novo the court's legal conclusion regarding his ineligibility for the safety valve. See United States v. McLean, 409 F.3d 492, 501-02 (1st Cir.), cert denied, 126 S.Ct. 466 (2005). Narváez-Rosario had the burden of demonstrating to the district court that he was entitled to a safety valve reduction. Id. at 502.

The district court correctly concluded that Narváez-Rosario did not qualify for safety valve relief. Narváez-Rosario stipulated in the plea agreement that he would receive a safety valve reduction only if he satisfied all of § 5C1.2's requirements. One such requirement was that he "not have more than one criminal history point, as determined under the sentencing guidelines." U.S.S.G. § 5C1.2(a)(1). Narváez-Rosario did not dispute the district court's finding that he had three criminal history points as determined under the sentencing guidelines. Thus, because he did not comply with all of the requirements of Guideline § 5C1.2(a), he was not entitled to a safety valve reduction under the terms of the plea agreement.

Relying on Booker, Narváez-Rosario argues that it was within the district court's discretion to disregard the criminal history

-5-

computation called for by the sentencing guidelines.  Even if this argument was not foreclosed by Narváez-Rosario's stipulation in the plea agreement that his sentence would be determined according to the guidelines, his argument fails as a matter of law because there can be no <u>Booker</u> error where a defendant is sentenced to a statutory minimum based on admitted facts.  <u>United States</u> v. <u>Bermúdez</u>, 407 F.3d 536, 545-46 (1st Cir.), <u>cert.denied</u>, 126 S.Ct. 304 (2005); <u>see also</u> <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005) ("A mandatory minimum sentence imposed as required by a statute based on facts found by a jury or admitted by a defendant is not a candidate for <u>Booker</u> error.").  Here, Narváez-Rosario admitted in the plea agreement to the facts underlying the crime for which he received the mandatory minimum sentence.  Contrary to Narváez-Rosario's contention, <u>Booker</u> does not give a district court the discretion to disregard an otherwise applicable statutory minimum.  <u>See</u> <u>United States</u> v. <u>Lee</u>, 399 F.3d 864, 866 (7th Cir. 2005).

The judgment of the district court is **<u>affirmed</u>**.