TACHA, Chief Circuit Judge,
concurring.
I fully concur in the majority opinion. I write separately because I would also find that Mr. Gonzalez-Huerta cannot satisfy the third prong of plain-error review. I am authorized to say that Judge Kelly, *740 Judge Murphy, - Judge O’Brien, Judge McConnell, and Judge Tymkovich join this concurring opinion.
Having concluded that the burden squarely rests on Mr. Gonzalez-Huerta, I would turn next to whether he satisfies the third-prong. Unlike in United States v. Antonakopoulos, 399 F.3d 68 (1st Cir.2005), or United States v. Shelton, 400 F.3d 1325, 1328, 1332-33 (11th Cir.2005), Mr. Gonzalez-Huerta does not point to anything in the record that shows with a reasonable probability that his substantial rights were affected by the mandatory application of the Guidelines. The most he can offer is speculation that with its new-found discretion the District Court might impose a lower sentence. In my view, this is an insufficient showing.
In the District Court, Mr. Gonzalez-Huerta offered no mitigating evidence that suggests a lower sentence would be justified, nor did he contest facts in the presen-tence report. Indeed, the court specifically asked Mr. Gonzalez-Huerta, “Are all of the statements of fact in your [presen-tence] report correct?” Mr. Gonzalez-Huerta replied, “Yes.” The court then inquired, “[I]s there any need for an eviden-tiary hearing on disputed facts?” Defense counsel stated there was not. The court again asked, “Are there any written materials other than the presentence report that I should take into account?” Mr. Gonzalez^-Huerta’s lawyer replied, “Nothing on behalf of the defendant, Judge.” The court then stated its intention to sentence Mr. Gonzalez-Huerta to 57 to 71 months’ incarceration and asked, “Are you in agreement with that?” Defense counsel replied, “Yes, your honor.” Yet again, the court asked defense counsel, “would you like to make a statement on behalf of Mr. Gonzalez at this time?” Defense counsel thanked the Judge for sentencing at the low end of the range and stated that he had informed Mr. Gonzalez-Huerta that he was eligible for good-time credits. This record, at best, leaves me only with speculation that the District Court would have issued a lower sentence if it had sentenced under a non-mandatory Guideline regime.
The Court in Jones v. United States, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), which was a capital case, instructs that such speculation about a possible lighter sentence cannot satisfy the third prong of plain error. The Court held that when “the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial lights.” Jones, 527 U.S. at 394-95, 119 S.Ct. 2090; see also United States v. Rodriguez, 398 F.3d 1291, 1299-1301 (11th Cir.2005) (applying Jones to a constitutional Booker error case), petition for cert. filed, (U.S. Feb. 23, 2005) (No. 04-1148). The Court faced a similar issue in Romano v. Oklahoma, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994), another capital case. In Romano, the Court held that even if the sentencing jury considered an impermissible factor in recommending a death sentence, the defendant could not demonstrate that substantial rights were affected when that “conclusion necessarily rests upon one’s intuition.” Id. at 14, 114 S.Ct. 2004.
This Court faces a similar situation here. Mr. Gonzalez-Huerta urges that if he were resentenced, the District Court would enter a lower sentence. But this conclusion, as in Romano, necessarily rests upon Mr. Gonzalez-Huerta’s intuition that the sentencing court would employ its newfound sentencing discretion to enter a lower sentence. One could just as easily intuit that the court here would enter the same sentence. Indeed, in many cases, although not in this case, a reviewing court could easily intuit that the district court would impose a greater sentence on remand. Cf. *741 United States v. Forbes, slip op. No. 03-1597, 124 Fed.Appx. 45, 47, 2005 WL 481605, *2 (2nd Cir. Mar.1, 2005) (unpublished) (“We note that should Forbes determine upon remand that for whatever reason, including the possibility that he might expose himself to a higher sentence, he does not in fact seek resentencing, he may so inform the court”). Therefore, I would hold that Mr. Gonzalez-Huerta has not met his burden.
The dissent relies heavily on post-Booker sentencing statistics from the United States Sentencing Commission. See Linda D. Maxfield, U.S. Sentencing Comm’n, Data Extract on March S: Numbers on Postr-Booker Sentencings at 2 (Mar. 14, 2005) (available at http://www.ussc.gov/Blakely/booker— 030305.pdf) (last visited Mar. 30, 2005). Relying on these statistics, the dissent states that 13.7 percent of all sentences post-Booker are below the Guidelines range when the Government does not recommend a departure. The dissent argues that this statistical variance suggests that both the third and fourth prongs of plain-error review are met in most non-constitutional Booker plain error cases. This lone statistic, however, does not display the whole picture.
The rate of non-government-sponsored, below-Guidelines-range sentences is only slightly greater post-Booker than before Blakely and Booker were handed down. See Linda D. Maxfield, U.S. Sentencing Comm’n, Data Extract on March IS: Numbers on Post-Booker Sentencings at 10 (Mar. 22, 2005) (available at http://www.ussc.gov/Blakely/booker— 032205.pdf) (last visited Mar. 30, 2005). In Fiscal Year 2002 (i.e., before Blakely), 11.9 percent of defendants were sentenced below the Guidelines range without government sponsorship. Id. Post -Booker, 13.7 percent of defendants are sentenced below the Guidelines range without government sponsorship. Id. This is a change of only 1.8 percentage points. This 1.8 percentage point increase in the likelihood of a lower sentence — without any case-specific indicia that a lower sentence would be entered — does not show “a reasonable probability that, but for the error claimed, the result of the proceeding [in this case] would have been different.” United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2339, 159 L.Ed.2d 157 (2004).
Even more telling, in Fiscal Year 2002, only 0.8 percent of sentences were above the Guidelines range. Maxfield, U.S. Sentencing Comm’n, Data Extract on March 15: Numbers on Postp-Booker Sentencings at 10. Post-Booker, 1.9 percent of sentences are above the Guidelines range. Id. This is a change of 1.1 percentage points. If this Court were to rely upon generalized statistics as the dissent suggests, then it would face a situation in which, post-Booker, a defendant has a 1.8 percentage point increased chance of a below-Guidelines-range sentence and a 1.1 percentage point increased chance of an above-Guidelines-range sentence. Without any case-specific indicia that a lower (or greater) sentence would be given, whether these statistics show a reasonable probability that a lower sentence would be entered is a “conclusion [that] necessarily rests upon one’s intuition.” Romano, 512 U.S. at 14, 114 S.Ct. 2004.[1]
*742 Because I would also hold that Mr. Gonzalez^Huerta bears the burden to meet the third prong of plain-error review and that he does not bear his burden, I would affirm based upon the third prong of plain-error review as well as the fourth.

. Even focusing just on post-Booker statistical data, there is an important distinction that the dissent fails to mention. Of the 13.7 percent of sentences entered below the Guidelines range, 4.7 percent of those lower sentences were based upon Guidelines approved “downward departures.” Maxfield, U.S. Sentencing Comm’n, Data Extract on March 3: Numbers on Post-Booker Sentencings at 2. Thus, 8.3 percent of "[a]ll cases explicitly cit[e] either U.S. v. Booker or 18 USC § 3553 as a reason for a sentence below the guideline *742 range .... [or] do not provide a reason for the below-guideline sentence.” Id. at 2 n. 3. Hence, post-Booker only 8.3 percent of sentences receive a non-Guidelines approved lower sentence. Here, Mr. Gonzalez-Huerta does not argue that any additional Guidelines departures apply. As such, a proper reading of the post-Booker-only statistics places Mr. Gonzalez-Huerta in a category where only 8.3 percent of defendants have received lower sentences.