# United States Court of Appeals
## For the First Circuit

No. 04-2099

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN M. PANICO, a/k/a TONY, J.P.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

Robert F. Benson, Jr. with whom Torres, Benson & Guarino, P.C. was on brief for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

January 19, 2006

**BOUDIN**, <u>Chief Judge</u>.  John Panico, the defendant-appellant in this case, was tried in the district court on charges of conspiracy to collect debts by extortionate means, 18 U.S.C. § 894 (2000), collecting a debt by such means, <u>id.</u>, and using a firearm in aid of a crime of violence, <u>id.</u> § 924(c).  He was convicted on the first two counts, acquitted on the third, and sentenced to 57 months of imprisonment.

Key evidence at the trial included FBI tape recordings of calls made by or to the victim of the threats, Thomas Andrews.  In one set, threats were made to Andrews by a man known to Andrews as "Tony G."; in the others, one Joe Auciello, a friend of Andrews who was the intermediary between Andrews and Tony G., relayed threats purportedly on behalf of Tony G.  The government argued that "Tony G." was in fact John Panico.

Initially, the recordings were offered during the testimony of an FBI agent who identified two of the voices as those of Andrews and Auciello; but the agent could not identify the third voice.  The tapes were admitted subject to later connection, and in due course, two state policemen identified the third voice as Panico's; one of the officers had known Panico from childhood and the other had heard him speak five or six times in the period preceding the trial.

Panico, who did not object to the authentication of the tapes at trial, argues on appeal that their admission was plain

error. He argues that during the investigation, the FBI asked the two state troopers to identify the third voice as that of Panico—rather than, say, merely to identify the voice.[1] There is no suggestion that the FBI asked the troopers to lie--merely that the FBI's procedure impermissibly suggested the desired answer and so tainted the later courtroom identification under Manson v. Brathwaite, 432 U.S. 98 (1977).

The admission of the evidence was not error at all, let alone plain error under the Olano standard. United States v. Olano, 507 U.S. 725, 733-34 (1993). It is not enough to bar an identification, either of voices or of faces, that the procedures were "suggestive"; it must also be shown that, under the "totality of the circumstances," the identification was "unreliable." Neil v. Biggers, 409 U.S. 188, 196-98 (1972); see also United States v. Gilbert, 181 F.3d 152, 163 (1st Cir. 1999).

Lay witness identification, based on the witness' prior familiarity with a voice, is a commonplace way in which voices are identified. See Fed. R. Evid. 901(b)(5); 5 Weinstein's Federal Evidence § 901.06[1] (2005). In this case, both troopers had heard Panico's voice before; one of them had known him since childhood. There is no indication that either trooper had any incentive to

---

[1]Just how the identifications were elicited by the FBI during the investigation is not crystal clear. At trial, when asked if he knew he was going in to identify Panico's voice, the lead trooper replied, "At some point, I guess I did. Yes."

misrepresent; indeed, they were not even responsible for the investigation. And, of course, there were two witnesses--one bolstering the other.

The more neutral the protocol, the more weight the identification may carry with the jury. But the party seeking to discredit evidence is free to bring out anything that may lessen the weight to be accorded, Manson, 432 U.S. at 116, as defense counsel did in this case. Only in an extreme case, where the identification procedure creates a "very substantial likelihood of irreparable misidentification," will the evidence be excluded on due process grounds. United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003), cert. denied, 539 U.S. 936 (2003) (quoting United States v. de Jesus-Rios, 990 F.2d 672, 677 (1st Cir. 1993)). Nothing like that is present in this case.

As it happens, at trial Auciello also identified the third voice as that of Panico and testified that he (Auciello) was physically present with Panico during one of the recorded calls between Andrews and Tony G. We mention this point last only to emphasize that the troopers' evidence was independently admissible regardless of Auciello's independent corroboration, and that there was no error at all under the Manson line of decisions.

Next, Panico argues that the prosecutor made false and misleading statements to the jury during closing argument, entitling Panico to a new trial. No objection was made at the

-4-

time, so the review is for plain error.  United States v. Medina, 427 F.3d 88, 91 (1st Cir. 2005).  In the relevant portion of the closing argument, set forth below, the reader should focus on the reference to Panico as one of the three "witnesses" who establish Panico's guilt.

> The evidence in this case points in one direction.  It points in the direction of this man here, the defendant, John Panico.  And the evidence shows beyond any reasonable doubt that [he's] guilty as he's charged.
>
> In particular, I want to talk to you about three different witnesses who have testified during the course of this trial.  Because those three witnesses all tell you the same three things.  And those three things all show that the defendant is guilty of each of the three charges against him.
>
> So, who were the witnesses?  What are the three things they tell you?  And what are the three counts that those three things prove?
>
> The three witnesses are Tom Andrews, Joey Auciello and the defendant himself, John Panico.  The three things they tell you--that Tom Andrews owed a gambling debt to Joey Auciello and John Panico.  And he didn't pay that debt.  When he didn't pay that debt, they also tell you that Joey Auciello and John Panico, together and separately, threatened Tom Andrews.  And the third [thing] they tell you is that when the threats didn't work, John Panico used a gun to try to collect that gambling debt.

Panico asserts that the description of him as a "witness" was improper both because it was inaccurate--Panico did not testify at all at the trial--and because it highlighted Panico's decision not to testify, thereby amounting to a forbidden comment by the

-5-

prosecutor "on the accused's silence." Griffin v. California, 380 U.S. 609, 615 (1965).

The prosecutor's statement was assuredly a rhetorical device, possibly ill-chosen, designed to stress that Panico's tape-recorded threats were evidence against him and in his own voice-- even though not uttered as a trial witness. Certainly, in this short trial, there is no likelihood that the jury would have thought that Panico had in fact testified as a witness and so been misled into thinking that the metaphorical phrasing was literal truth. Thus, the "inaccuracy" charge has little bite.

Paradoxically, Panico's alternative claim under Griffin rests upon an opposite reading, i.e., that the reference to Panico as a "witness" was not a literal inaccuracy, but instead an ironic comment on Panico's failure to testify as a witness. "A prosecutor's remarks violate a defendant's Fifth Amendment guarantee against self-incrimination if 'in the circumstances of the particular case, the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" United States v. Wilkerson, 411 F.3d 1, 8-9 (1st Cir. 2005) (quoting United States v. Wihbey, 75 F.3d 761, 769 (1st Cir. 1996)).

The prosecutor here made no direct reference to Panico's failure to testify, nor is the "ironic" meaning self-evident; this

was not language that a jury would "naturally and necessarily" take to be a forbidden comment. Nothing indicates that the prosecutor "manifestly intended" his closing as a comment on Panico's failure to testify--an intention that would obviously be improper under <u>Griffin</u> (as well as foolish, since the jury usually notices whether or not the defendant testifies).

If Panico's counsel had objected, there is a reasonable likelihood that the judge would have cautioned the jury, which is one reason why contemporaneous objections are required. That counsel did not object is some indication that neither of the two newly suggested flawed meanings was readily apparent. In all events, the closing--if error at all--was a minor slip that was neither "plain" error nor capable of altering the result in the teeth of very strong evidence against Panico provided by the tapes backed by three voice identifications.

Finally, Panico says that the case should be remanded for resentencing in light of <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005). The district judge made clear by his remarks at sentencing that he would give a lower sentence (he described the alternatives) if the sentencing guidelines were loosened or abolished. The <u>Booker</u> claim was preserved, and this is a clear case for a remand for resentencing, <u>see</u> <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 81 (1st Cir. 2005). The government, quite properly, does not object to resentencing.

The conviction is <u>affirmed</u>, the sentence is <u>vacated</u> and the matter is <u>remanded</u> to the district court for resentencing.

<u>It is so ordered</u>.