# United States Court of Appeals
## For the First Circuit

No. 05-1691

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO PORTES, A/K/A JUNIOR DIAZ PENA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

Tina Schneider for appellant.
Heidi E. Brieger, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

October 11, 2007

**LIPEZ**, <u>Circuit Judge</u>.  Following a conviction for various charges stemming from his operation of a heroin distribution organization, appellant Roberto Portes challenges the sentence imposed by the district court.  Specifically, he contends that the court committed error by (1) sentencing him pursuant to a statute with an increased statutory maximum on the basis of a drug quantity that the jury did not find beyond a reasonable doubt, in violation of <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000); and (2) treating the Sentencing Guidelines as mandatory, in contravention of <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005).  We reject both claims -- the former due to the overwhelming and essentially uncontroverted evidence of the requisite quantity of drugs, and the latter because Portes has failed to demonstrate a reasonable likelihood that the district court would impose a different sentence under an advisory Guidelines regime.  Consequently, we affirm Portes's sentence.

**I.**

**A. Factual Background**

In 1994, the Drug Enforcement Administration ("DEA") began an investigation of a heroin distribution organization that Portes operated.  At trial, four of Portes's former employees (Jorge Luis Diaz-Mejia, Nelson Marrero-Morrel, Hector Mena-Perez, and Elso Valverde), who had agreed to cooperate with the

government, testified about the mechanics of the organization.[1] One participant would drive from Worcester, Massachusetts to New York once or twice a week to retrieve drugs from a contact there. The cash to purchase the drugs would be transported to New York in a secret compartment in the Buick; the drugs would be placed in that compartment on the return trip. Back in Worcester, the participants would weigh and package the heroin at various locations, including Portes's residence at 47 Florence Street; a room at the Clarion Suites Hotel rented in the name of Junior Pena, one of Portes's aliases; a space leased at One Wayne Terrace; and the residence of Rodolfo Matos, another of Portes's employees. Law enforcement agents surveilled all these locations at various times. They also rented a room across the hall from the room at the Clarion Suites Hotel, from which they observed most of the participants in the conspiracy arriving at and leaving the room, sometimes putting items into their pockets.

The four cooperating witnesses testified that Portes employed them in processing and distributing the heroin. They performed tasks such as sealing envelopes containing heroin, using a press to make one ounce tablets of heroin, and delivering packages of heroin to customers. Mena-Perez testified that Portes

---

[1] These former employees also were charged with various drug offenses, but pled guilty rather than go to trial.

kept ledgers recording the amount of heroin delivered to various customers and the amount of money those customers owed.

A DEA special agent, acting in an undercover capacity, arranged to purchase heroin from Matos on five occasions. On January 24, 1995, the agent met Matos at 16 Svea Street in Worcester and paid him $7,400 for two ounces (55.1 grams) of heroin in a compressed, tablet form wrapped in red and white paper and tape. On February 23, the agent met Matos at Matos's residence in Worcester and paid him $11,400 for three ounces (84.3 grams) of heroin. Prior to this meeting, Matos went to Portes's residence; shortly thereafter, Marrero-Morel and Valverde went to the Clarion Suites Hotel for about five minutes, then returned to Portes's residence. Matos then returned to his own residence.

On May 2, the agent purchased two ounces (55.7 grams) of heroin from Matos for $7,600 while they sat in a white Buick LeSabre. Matos retrieved the heroin from a secret compartment in the glove compartment of the car. Prior to this transaction, Matos went to Portes's residence, where he met Portes, Mena-Perez, and Ruben Perez. After exiting Portes's residence, Matos and Perez entered the Buick, which was parked outside, and Perez appeared to "fiddle" with the glove compartment area. Perez then got out of the car and Matos drove to meet the agent in the Buick.

On June 1, the agent met Matos at the Auburn Mall in Worcester and paid him $7,600 for two ounces (56.1 grams) of

heroin. At that time the agent indicated that he wished to purchase a larger quantity of heroin for a discounted price. Subsequently, the agent and Matos negotiated over the phone for the sale of eight ounces of heroin for $29,600. Diaz-Mejia testified that, on August 10, he saw Portes wrapping and sealing nine one-ounce tablets of heroin inside One Wayne Terrace. The planned transaction never occurred because most of the defendants were arrested that day. However, in executing search warrants, law enforcement agents seized nine ounces (251.3 grams) of heroin from the hidden compartment of the Buick. They also seized a large quantity of drug paraphernalia from One Wayne Terrace, much of which contained trace amounts of heroin, and a bag containing 14.5 grams of heroin in a powdered form.

## B. Procedural History

The second superseding indictment, returned on June 6, 1996, brought various charges relating to the heroin distribution organization against Portes and his co-defendants.[2] Three counts

_____

[2] Nine defendants were charged in the original indictment, of whom only Portes and Julio Santana went to trial. Jorge Luis Diaz-Mejia, Nelson Marrero-Morrel, Hector Mena-Perez, and Elso Valverde pled guilty and, as noted, testified for the government at trial. Matos, Luis Adolfo Diaz, and Mayra Lopez pled guilty but were not involved in Portes's trial. Santana was tried separately in March 1996 for conspiracy to possess cocaine base with the intent to distribute it, in violation of 21 U.S.C. § 846, but the district court declared a mistrial after the jury was unable to reach a verdict. Following a second trial, Santana was convicted on all counts in April 1996, but we reversed his conviction in May 1999, see United States v. Santana, 175 F.3d 57 (1st Cir. 1999). Santana subsequently pled guilty in November 1999. A tenth defendant,

were relevant to Portes. Count One charged Portes and various others with conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and § 846. Count Four charged Portes with the possession of heroin with the intent to distribute it on August 10, 1995, in connection with the "alleged heroin found at One Wayne Terrace," in violation of 21 U.S.C. § 841(a)(1). Count Five charged Portes with possession, and aiding and abetting Mena-Perez's possession of, heroin on August 10, 1995, with the intent to distribute it, in connection with the "heroin allegedly found in the white Buick LeSabre," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On these three counts, the indictment did not include any specific allegations with respect to the quantity of drugs involved.

At trial, the district court did not instruct the jury that it must find any specific quantity of drugs.[3] Indeed, its instructions stated: "If you find that the material involved is heroin, beyond a reasonable doubt, you need not be concerned about the quantity." The jury returned a guilty verdict on the three drug counts related to Portes.

The Presentence Report ("PSR") stated that Portes was responsible for an amount of heroin between ten and thirty

Eduardo Perez, was identified following the filing of the original indictment, charged in the second superseding indictment, and subsequently entered a guilty plea.

[3]Portes did not request such an instruction.

-6-

kilograms, resulting in a base offense level of thirty-six. The PSR added several enhancements: two levels for the gun found at One Wayne Terrace, under U.S.S.G. § 2D1.1(b)(1); four levels because Portes was a leader of a criminal activity involving five or more participants, under U.S.S.G. § 3B1.1(a); and two levels for obstructing justice due to Portes's threats to cooperating defendants, under U.S.S.G. § 3C1.1. After totaling these enhancements, the PSR concluded that Portes was subject to the maximum offense level of forty-three. The PSR also established the sentencing range for each offense: a ten-year mandatory minimum and a statutory maximum of life imprisonment on Count One; a maximum of twenty years' imprisonment on Count Four; and a five-year mandatory minimum and a statutory maximum of forty years on Count Five.

Portes objected to the drug quantity stated in the PSR, contending that, "based upon the testimony at the trial, it is impossible to calculate the quantity of heroin attributed to him to be in the range of 10 kilograms." He contended that the only heroin attributable to him should be the amount related to "the specific offenses that he was charged with in the indictment."

Prior to sentencing Portes, the district court conducted a four-day evidentiary hearing. The government presented testimony from five cooperating witnesses,[4] who testified regarding the

---

[4] The five witnesses included the four who testified at Portes's trial as well as Eduardo Perez.

amount of heroin involved in Portes's offenses; and from a DEA special agent, who testified that, based on his review of the drug ledgers, the statements of the nine cooperating defendants, the heroin seized, and the heroin purchased, the conspiracy involved a total of 21,584 grams of heroin. Portes contested this drug quantity calculation, disputing the credibility of the government's cooperating witnesses as to drug quantity and arguing that the amount in question was "less than ten kilograms."

The court concluded that Portes was responsible for more than three kilograms of heroin "beyond a reasonable doubt" and for seven to eight kilograms of heroin "by a preponderance of the evidence." In making these determinations, the court relied on the heroin seized from One Wayne Terrace and the Buick, the heroin that Matos sold to the undercover agent, and the heroin listed in the drug ledgers (which the court discounted somewhat because the ledgers included entries for cocaine as well as heroin transactions). The court stated that it did not rely on the cooperating witnesses' testimony in making these determinations. Based on this drug quantity, the court determined that Portes's base offense level was thirty-four; after applying the enhancements described in the PSR, his total offense level was forty-two. It then sentenced him to thirty years' imprisonment on Counts One and Five and twenty years' imprisonment on Count Four, to be served concurrently. It also sentenced Portes to five years of supervised

release on each count, to be served concurrently, and ordered him to pay a $1 million fine. Portes now appeals this sentence.

## II.

Portes raises two claims on appeal. First, he argues that the district court's reliance on drug quantities that were not found by a jury beyond a reasonable doubt violated Apprendi v. New Jersey, 530 U.S. 466 (2000). Second, he contends that the district court treated the Sentencing Guidelines as mandatory, in violation of United States v. Booker, 543 U.S. 220 (2005).

## A. Apprendi Error

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Portes was convicted and sentenced four years prior to this decision. He did not challenge the grand jury's failure to charge a specific drug quantity in the indictment, nor did he challenge the district court's failure to submit the issue of drug quantity to the jury to decide beyond a reasonable doubt. At sentencing, he objected to the quantity of drugs the district court used in its calculation.

We have held that merely objecting to the quantity of drugs is insufficient to preserve an Apprendi claim. United States v. Terry, 240 F.3d 65, 72-73 & n.7 (1st Cir. 2001); United States

v. LaFreniere, 236 F.3d 41, 48 (1st Cir. 2001). Thus, we review Portes's Apprendi claim for plain error under Federal Rule of Criminal Procedure 52(b). Under such review, "'there must be (1) error, (2) that is plain, and (3) that affects substantial rights.'" United States v. Cotton, 535 U.S. 625, 631 (2002) (quoting Johnson v. United States, 520 U.S. 461, 466-67 (1997) (internal quotation marks omitted)). If such an error has occurred, we may then "'exercise [our] discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Johnson, 520 U.S. at 467).

The punishment for a violation of 21 U.S.C. § 841(a) and § 846 varies in relation to the quantity of controlled substance involved in the violation. If the violation involved more than one kilogram of heroin, the sentencing exposure is ten years to life imprisonment. Id. § 841(b)(1)(A). If the violation involved more than one hundred grams of heroin, the statute provides a mandatory minimum of five years' imprisonment and a maximum of forty years' imprisonment. For all other quantities of heroin, the "default" provision establishes a statutory maximum of twenty years' imprisonment. Id. § 841(b)(1)(C).

The district court sentenced Portes to thirty years' imprisonment. However, none of the three heroin counts in the indictment included a specific allegation of drug quantity.

Consequently, the jury was not asked to find any specific quantity of heroin, leaving Portes subject, on the basis of the jury verdict, only to the "default" statutory maximum sentence of twenty years. As the government correctly concedes, this omission meets the first two prongs of plain error review: there was an error in formulating Portes's sentence, and that error was obvious in light of Apprendi. See Cotton, 535 U.S. at 632.

We need not decide whether this error affected Portes's substantial rights under the third prong of plain error review because, in any event, the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. This case is strikingly similar to the Supreme Court's decision in Cotton. There, the defendants challenged their sentences on the ground that the indictment charging them with conspiracy to possess cocaine base with intent to distribute did not allege the threshold drug quantity necessary to apply an enhanced statutory penalty. Id. at 628. Although the defendants thus should have been subject to a "default" twenty-year statutory maximum, the district court sentenced them to thirty years' imprisonment because evidence introduced at trial demonstrated that the conspiracy involved a sufficient quantity of cocaine base to qualify for an increased maximum. Id. The defendants did not object at trial or at sentencing to the lack of a specific allegation of drug quantity. Id.

Applying plain error review, the Supreme Court explained that, "even assuming [defendants'] substantial rights were affected, the error did not seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. at 632-33. The Court upheld the sentence on the ground that the evidence that the drug quantity exceeded the level required for enhancement was "overwhelming" and "essentially uncontroverted," explaining that "[s]urely the grand jury, having found the conspiracy existed, would have also found that the conspiracy involved" the requisite drug quantity. Id. at 633; see also United States v. Terry, 240 F.3d 65, 74-75 (1st Cir. 2001)(holding, in the alternative, that the failure to charge the relevant drug quantities in the indictment was not plain error where the "uncontested testimony of a DEA chemist at trial established the quantities and types of the drugs" and "[t]here is no question that the petit jury in this case would have found [the defendant's] offenses to involve" the requisite amount for an increased statutory maximum).

As in Cotton, the evidence regarding the drug quantity for which Portes was responsible was "overwhelming" and "essentially uncontroverted." Considerable evidence supported the fact that more than one hundred grams of heroin (the amount necessary to increase the maximum sentence to forty years under § 841(b)(1)(B)) were involved in each of the relevant charges. With

respect to Count Five, there was no dispute that the Buick contained 251.3 grams of heroin. With respect to the conspiracy charge, the total amount of heroin that the agent purchased from Matos and the heroin seized from the Buick and One Wayne Terrace undisputedly totaled over five hundred grams. Indeed, the drug ledgers introduced into evidence at trial and the cooperating witnesses' testimony indicated that the total amount of heroin in fact was over one kilogram, which would have raised the maximum sentence to life imprisonment under § 841(b)(1)(A).

Although Portes actively challenged the government's case against him, he focused on whether he committed the offenses and not on the drug quantities at issue. For example, Portes argued that he was not involved in the drug transactions and that the Buick was not his. However, he did not contend that the heroin found in the Buick and at One Wayne Terrace weighed less than the government claimed.[5] We thus think that the situation here is analogous to <u>Cotton</u>. Given that the jury found Portes guilty of the charged offenses, it also would have found that his crimes

---

[5] Indeed, Portes himself, in his objection to the PSR, stated that the amount of heroin attributable to him should be only that associated with "the specific offenses that he was charged with in the indictment." The amount associated with those specific offenses consists of the 251.3 grams found in the Buick and the 14.5 grams found at One Wayne Terrace.

involved the uncontroverted drug amounts found in the Buick and at One Wayne Terrace and purchased by the undercover agent.[6]

Thus, the court's reliance on this drug quantity in sentencing did not impair the fairness, integrity, or public reputation of the judicial proceedings. We therefore conclude that there was no plain error in the district court's decision to sentence Portes to thirty years' imprisonment.

## B. __Booker__ Error

Portes also contends that, by sentencing him under a mandatory Sentencing Guidelines regime, the district court violated __Booker__, 543 U.S. 220, which held that the Sentencing Guidelines are advisory rather than mandatory. To preserve this claim for appeal, a defendant must have raised and argued error under __Apprendi__, 530 U.S. 466, or __Blakely__ v. __Washington__, 542 U.S. 296 (2004), or challenged the constitutionality of a mandatory Guidelines regime. __United States__ v. __Antonakopoulos__, 399 F.3d 68, 76 (1st Cir. 2005). Portes raised none of these arguments before the district court, and so we review his claim for plain error. __Id.__

---

[6] Portes did argue at sentencing that the cooperating witnesses' testimony about the drug quantities was unreliable, and that the drug ledgers also were unreliable because they did not clearly differentiate between cocaine and heroin amounts. However, even if we wholly disregard that evidence in calculating the amount of drugs, the uncontroverted amounts found in the Buick and at One Wayne Terrace and purchased by the undercover agent total well in excess of the one hundred grams necessary to increase the statutory maximum to forty years' imprisonment.

-14-

We have held that a defendant has met the first two prongs of plain error review if, as here, the district court treated the Guidelines as mandatory rather than advisory. Antonakopoulos, 399 F.3d at 75. However, Portes has failed to meet the third prong of plain error review by demonstrating that this error affected his substantial rights. See Johnson, 520 U.S. at 466-67. This prong places the burden on a defendant alleging a Booker error to "point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." Antonakopoulos, 399 F.3d at 75. Portes has alleged no such circumstances. Nothing in the record indicates that the district court was troubled by the sentence it imposed or that it would have imposed a lower sentence if the Guidelines had been advisory at that time. Indeed, Portes's Booker claim rests largely on his Apprendi claim that the court plainly erred in sentencing him above the "default" statutory maximum. Since we have ruled against him on that claim, the record is devoid of anything suggesting a "reasonable probability" that the district court would impose a sentence more favorable to Portes. Thus, we find no plain error in the district court's application of a mandatory Guidelines sentencing scheme.

### III.

For the aforementioned reasons, we **affirm** Portes's

sentence.

**<u>So ordered.</u>**