# United States Court of Appeals
## For the First Circuit

Nos. 02-1712, 03-1039, 07-2379

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

WILLIAM MERLINO,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lipez, Hansen,[*] and Howard,
Circuit Judges.

Judith H. Mizner for appellant/cross-appellee.
John-Alex Romano, with whom Michael J. Sullivan, United States
Attorney, was on brief, for appellee/cross-appellant.

January 15, 2010

---

[*]Of the Eighth Circuit, sitting by designation.

**HANSEN**, **Circuit Judge**. William Merlino and his three codefendants, Carmello Merlino (William's uncle), David Turner, and Stephen Rossetti, were charged with violating the Hobbs Act, 18 U.S.C. § 1951, and with carrying firearms in relation to a crime of violence, 18 U.S.C. § 924(c), after the FBI foiled their planned robbery of the Loomis Fargo armored car facility in Easton, Massachusetts. A jury found the defendants guilty, but the district court granted William Merlino a judgment of acquittal on count three, one of the § 924(c) counts. He appeals his convictions on the other counts on the basis that he was denied his right to testify in his own defense. He also brings a Booker[1] challenge to his sentence. The Government cross-appeals, challenging the district court's judgment of acquittal on count three. We affirm William Merlino's convictions and his sentence, but we reverse on the Government's cross-appeal and remand for further proceedings.

I.

Anthony Romano, a former FBI informant, worked with Carmello Merlino (hereinafter "Carmello" for clarity's sake) at TRC, an automobile repair shop. Carmello approached Romano about helping him find someone who could work inside an armored car facility to help stake it out for a robbery. The FBI had been watching Carmello and codefendant Turner for some time because of

_____

[1]United States v. Booker, 543 U.S. 220 (2005).

-2-

their suspected involvement in the unsolved theft of several historic paintings from the Isabella Stewart Gardner Museum in Boston. Unbeknownst to Carmello, Romano was already providing information to FBI Agent David Nadolski about the paintings heist, and Romano informed Agent Nadolski about Carmello's plan to rob the armored car facility. Romano became a cooperating witness for the FBI, taping conversations he had with Carmello about the planned robbery. Carmello involved Turner and Rossetti, who helped surveil the armored car facility and plan the robbery. Romano suggested using Carmello's nephew, William Merlino (hereinafter "Merlino"), in the plan as well. Although Merlino had been trying to stay away from drugs and crime following the death of his wife, Romano testified at trial that Merlino expressed unhesitating interest in the plan when Romano described it to him as involving a $50 million score and an easy hit using insiders.

The robbery was planned for the early morning hours of February 7, 1999. The prior evening, Carmello, Romano, Turner, Rossetti, and Merlino all met at TRC to discuss the final plans and to prepare for the robbery. Merlino was to drive the van into the facility once it was secured and possibly guard the money after the robbery. He brought ski masks and four large duffle bags to the meeting in preparation for the robbery.

The following morning, federal agents arrested Carmello, Turner, and Rossetti as they converged on TRC, the designated

meeting point. Merlino was later arrested at a nearby gas station, where he was using a pay phone after having arrived at TRC and finding no one there.

Merlino was charged in four counts of a six-count indictment against the four codefendants. Counts one and two charged conspiracy and attempt to affect commerce by robbery, 18 U.S.C. § 1951, and counts three and four charged the codefendants with carrying firearms (count three involved a hand grenade and count four involved semi-automatic pistols and a rifle) during and in relation to a crime of violence, 18 U.S.C. § 924(c). Merlino raised an entrapment defense at trial, asserting that Romano had used intimidation and fear to pressure Merlino into joining the conspiracy against his will. He attempted to distance himself from his codefendants and portrayed his role as one of a mere gopher ("go-for"), who was kept on the periphery of the conspiracy.

The jury returned a guilty verdict on all counts against all defendants. The codefendants each filed motions for a new trial and for acquittal. In a published opinion, the district court denied all of the motions for a new trial, as well as all of the motions for acquittal, except that it granted Merlino's motion for acquittal on count three related to the hand grenade. See United States v. Merlino, 204 F. Supp. 2d 83, 92 (D. Mass. 2002). The Government filed a timely appeal from the judgment of acquittal on June 5, 2002.

On November 25, 2002, Merlino was sentenced to concurrent 100-month sentences on counts one and two and a consecutive 60-month sentence on count four's gun charge. Merlino filed a timely notice of appeal from his convictions and sentence on December 3, 2002. On December 5, 2002, he filed a motion for a "Conditional Determination by the Court Whether a Motion for New Trial Should Be Granted if the Judgment of Acquittal is Reversed," which the district court granted on February 4, 2003.

Merlino filed a second motion for a new trial on September 16, 2003, alleging ineffective assistance of counsel based on an alleged conflict of interest. That motion was denied in a published opinion. See United States v. Merlino, 523 F. Supp. 2d 66, 76 (D. Mass. 2007). Merlino filed a timely notice of appeal on August 2, 2007.

II.

On appeal, Merlino challenges the district court's determination that he was not denied his Sixth Amendment right to testify at trial on his own behalf, and he challenges his sentence based on Booker. In its cross-appeal, the Government challenges the district court's grant of a judgment of acquittal on count three related to the hand grenade.

**A.     Sixth Amendment Right to Testify**

Merlino challenges the district court's denial of his motion for a new trial based on his assertion that he was denied

his right to testify at trial.[2] "We review the denial of a motion for a new trial for abuse of discretion," United States v. Lnu, 544 F.3d 361, 369 (1st Cir. 2008), cert. denied, 129 S. Ct. 1379 (2009), reviewing the district court's factual findings for clear error, id.

There is no doubt "that a defendant has a 'fundamental constitutional' right to testify in his own defense," Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007) (quoting Rock v. Arkansas, 483 U.S. 44, 53 n.10 (1987)), and that the defendant, not his attorney, is the one who makes the ultimate decision whether to testify or not, id. (noting that a defendant's attorney cannot waive the defendant's right to testify). The district court held an evidentiary hearing to address Merlino's motion for a new trial. Peter Parker, Merlino's trial counsel, testified at the hearing that although he had agreed at the beginning of trial to call Merlino to the stand, his trial strategy changed based on the way the evidence had come in, and he then attempted to convince Merlino not to testify. During a heated "blowout" that occurred on one of the days of trial in the lock-up area of the courthouse, Parker and Merlino disagreed about whether to call Romano's ex-wife as part of

---

[2]Before the district court, Merlino made this assertion as part of his broader claim that his counsel was operating under a conflict of interest when he took on the representation of a retired FBI agent during Merlino's trial. Merlino does not challenge on appeal the district court's conclusion that there was no conflict of interest, and we limit our discussion accordingly.

-6-

his defense and about whether to cross examine FBI Agent Nadolski. According to Attorney Parker, Merlino finally agreed not to take the stand if Parker would ask specific questions of the FBI agents on cross-examination, which Parker did. Parker testified that Merlino made the final decision not to testify and that if Merlino would have insisted, Parker would have put him on the stand.

Merlino testified at the hearing that Parker had agreed all along that Merlino would testify as part of their trial strategy and that Merlino did not know that he would not be called to testify until Parker rested his case without calling him. Merlino claimed that he did not bring his desire to testify to the court's attention because he did not know he had the right to do so. Merlino recounted a blowout similar to the one testified to by Parker, but he recalled that it took place after Parker rested the case without calling Merlino to testify, which, according to Merlino, was the subject of the blowout. In an affidavit filed in support of his motion for a new trial, Merlino stated that he and Parker had had a heated argument about Parker's refusal to cross examine the two FBI agents, and he recounted in the affidavit another violent argument about Parker's refusal to call Romano's ex-wife. Merlino never mentioned in his affidavit that he and Parker had argued about Parker's refusal to call him to the stand.

After hearing all the evidence, the district court found that Parker's testimony was more credible and that Merlino in fact

made the final decision not to testify. Where a district court's "factual findings are based on credibility determinations[,] . . . 'error is seldom considered "clear" unless the credibility assessments were based on testimony which was inherently implausible, internally inconsistent, or critically impeached.'" Awon v. United States, 308 F.3d 133, 141 (1st Cir. 2002) (internal citation omitted) (quoting Keller v. United States, 38 F.3d 16, 25 (1st Cir. 1994)). After review, we conclude that the district court's determination that Merlino made the decision not to testify was not clearly erroneous. See Lnu, 544 F.3d at 369-70 (denying a motion for new trial based on alleged denial of defendant's right to testify where the district court's findings were made after a full hearing).

## B. Sentencing

Merlino was sentenced prior to Booker, the Supreme Court's decision that significantly changed the federal sentencing scheme and made the United States Sentencing Guidelines advisory. See 543 U.S. at 245. Merlino challenges the sentence he received on the basis that the district court improperly treated the Guidelines as mandatory. Because Merlino did not challenge the district court's treatment of the Guidelines at the time of sentencing, we review his claim for plain error. See United States v. Portes, 505 F.3d 21, 27 (1st Cir.) (describing elements of plain error review), cert. denied, 128 S. Ct. 730 (2007).

Merlino has met the first two elements of the plain error analysis because the district court did in fact treat the Guidelines as mandatory (which they then were) when it sentenced Merlino in 2002, and which, after Booker, is plain error now at the time of this appeal. See id. To establish the third element of our plain error review, Merlino must demonstrate that the error affected his substantial rights. See id. "This prong places the burden on a defendant alleging a Booker error to 'point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new "advisory Guidelines" Booker regime.'" Id. (quoting United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005)).

In this case, Merlino faced a career offender enhancement that would have resulted in a sentencing range of 210 to 262 months. The district court granted Merlino's request for a downward departure on the basis that Merlino's career offender status overstated the seriousness of his criminal history, see USSG § 4A1.3, and calculated Merlino's Guidelines sentencing range without considering the career offender guideline. The court further reduced Merlino's criminal history category from category VI to category V, even though his criminal history score alone would have placed him in category VI without consideration of the career offender guideline. The district court granted Merlino a

further four-level reduction in his offense level based on his minimal role in the criminal activity. See USSG § 3B1.2(a). The court nonetheless rejected Merlino's requests for a downward departure based on duress or coercion and based on the harsh conditions under which he was incarcerated prior to trial. It also rejected Merlino's request for a two-level downward adjustment for acceptance of responsibility. The district court calculated a sentencing range of 100 to 125 months, and it sentenced Merlino to the bottom of that range.

Merlino asserts that he has met his burden based on the fact that the district court sentenced him at the bottom of the applicable Guidelines range and based on the district court's characterization of his sentence as "substantial" but required, as "it [was] the minimum sentence that [the] calculation of the Guidelines permit[ted]." As we have often stated, a bottom-of-the-range sentence is insufficient in itself to meet the defendant's burden of establishing that the district court would likely have imposed a different sentence under an advisory scheme. See United States v. Escobar-Figueroa, 454 F.3d 40, 54 (1st Cir.), cert. denied, 549 U.S. 1025 (2006); United States v. Martinez, 452 F.3d 1, 7 (1st Cir. 2006); United States v. Diaz-Diaz, 433 F.3d 128, 141 (1st. Cir. 2005), cert. denied, 547 U.S. 1139 (2006).

Although the district court characterized Merlino's sentence as "substantial" and the minimum that was allowed under

the Guidelines calculation, the court did not indicate that it thought the Guidelines sentence was unfair or overly harsh. See Escobar-Figueroa, 454 F.3d at 54 ("The court likewise did not suggest that it felt the guidelines sentence was too harsh."). The district court resentenced Merlino's codefendant, Rossetti, who likewise received a bottom-of-the-range sentence, to the same sentence on remand from a successful Booker challenge. See United States v. Rossetti, No. 07-2380 (1st Cir. Oct. 3, 2008). We have considered similar circumstances when determining whether a defendant has met his burden of establishing that the district court would likely sentence him to a lesser sentence under an advisory regime. See Escobar-Figueroa, 454 F.3d at 54 (considering fact that the district court resentenced the defendant's codefendants to the same or higher sentences on a Booker remand in determining that the district court did not consider the Guidelines too harsh).

The district court substantially reduced the sentencing range that Merlino faced, from a potential range of 210 to 262 months down to a range of 100 to 125 months. Given the significant downward adjustments granted by the district court as outlined above, coupled with its refusal to depart further despite its authority to do so, we conclude that Merlino has failed to demonstrate a reasonable probability that the district court would give him a lesser sentence. See United States v. Jones, 432 F.3d

34, 45-46 (1st Cir. 2005) (rejecting Booker claim where the district court's denial of a departure motion indicated that it considered the defendant's situation not to be out of the ordinary).  We therefore decline to remand for resentencing on these grounds.

### C. Government's Cross-Appeal on Judgment of Acquittal

The Government cross appeals the district court's grant of a judgment of acquittal to Merlino on count three, which charged the defendants with carrying an explosive grenade during and in relation to a crime of violence, 18 U.S.C. § 924(c), and which carried a 30-year mandatory minimum sentence, § 924(c)(1)(B).  We review the district court's grant of Merlino's motion for a judgment of acquittal de novo. United States v. Olbres, 61 F.3d 967, 970 (1st Cir.), cert. denied, 516 U.S. 991 (1995).  "Like the trial court, we scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt."  Id. (internal quotation marks omitted).  A defendant is entitled to a judgment of acquittal only if "the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt." United States v. Bristol-Martir, 570 F.3d 29, 38 (1st Cir. 2009) (internal quotation marks omitted).  In making our assessment, we

-12-

do not weigh the evidence or make any credibility judgments, as those are left to the jury.  United States v. Ayala-Garcia, 574 F.3d 5, 11 (1st Cir. 2009).  We must uphold the verdict if it is "supported by a plausible rendition of the record."  Bristol-Martir, 570 F.3d at 38 (internal quotation marks omitted).

Count three was presented under a Pinkerton[3] theory of liability, under which "the Government may show 'that a co-conspirator carried or used a firearm in furtherance of the conspiracy and that this was reasonably foreseeable to the defendant.'"  United States v. Bucci, 525 F.3d 116, 132 (1st Cir. 2008) (quoting United States v. Flecha-Maldonado, 373 F.3d 170, 179 (1st Cir. 2004)).  Merlino's conviction on count three should stand (and the judgment of acquittal should be reversed) if the evidence established that it was foreseeable to Merlino that one of his co-conspirators would be carrying a hand grenade during the robbery.

The only evidence introduced at trial establishing Merlino's knowledge that a grenade would be used came from Romano, who testified about the meeting that took place the night before the planned robbery.  Romano testified that the group met to discuss the final arrangements for the robbery and that there were times during the final meeting when some of the coconspirators were "separate in the building for a while."  He could not recall whether there were periods of time toward the end of the meeting

---

[3]Pinkerton v. United States, 328 U.S. 640 (1946).

when the weapons, the equipment, and the specific plans were being discussed that any of the four coconspirators left the group. According to Romano, Merlino left the meeting to retrieve the bags to be used for the money at some point during the meeting. However, in response to the specific question by the prosecutor about who was present when "Rossetti told the group that he had guns and grenades," Romano replied, "Everybody was there." Even though Romano did not include a discussion of the grenade in his notes made shortly after the meeting, a fact brought out by Merlino's attorney, he remained steadfast in his testimony that he remembered Merlino being present for the hand grenade discussion when questioned on cross examination ("Q: And we only have your word that grenades and other weapons were discussed when Billy Merlino was there as opposed to when he wasn't, right? A: Right."), on redirect examination ("Q: In reviewing that, do you still maintain at this point that Willy Merlino was present when you–when Stephen Rossetti discussed guns and grenades for the robbery? A: Yeah."), and again on re-cross examination ("Q: And your memory is also that when grenades were discussed, everyone was there, including Billy Merlino, right? A: Right."). The Government concedes that Romano's testimony provides the only evidence that Merlino was aware that a grenade would be used.

In granting the motion for acquittal, the district court noted the "long-standing rule that a conviction can rest on the

-14-

uncorroborated word of an informant witness" and concluded that "in a purely legal sense, the verdict [wa]s unimpeachable." 204 F. Supp. 2d at 92. The district court stated that it did not doubt the credibility of Romano's testimony on other important aspects of the case and had no reason to disbelieve that Romano's testimony about who was present when Rosetti informed the others of the grenade reflected Romano's best efforts to accurately remember. Nonetheless, because of Romano's other "lapses of memory" and "the lack of any contemporary documentation or other corroborating evidence of his testimony on this point," it determined that the "unadorned statement 'Everybody was there' [was] too slender a reed to support the mandatory thirty year consecutive sentence that the law otherwise requires."[4] Id.

The uncorroborated testimony of a government informant is sufficient to establish the facts underlying a defendant's conviction. United States v. Martinez-Medina, 279 F.3d 105, 115 (1st Cir.), cert. denied, 537 U.S. 921 (2002); United States v.

---

[4]The length of the resulting sentence that attached to the conviction is not relevant to the determination of whether there was sufficient evidence to support the conviction itself. Cf. Shannon v. United States, 512 U.S. 573, 579 (1994) (noting that the consequences of a guilty verdict are irrelevant to the fact finder's task of determining whether, based on its fact-findings, the defendant is guilty of the crime charged). Although the standard for a judgment of acquittal does not change based on the length of imprisonment the defendant faces if convicted, it appears that the district court's assessment of Romano's testimony was, to some extent, clouded by that very fact. To the extent the district court considered the mandatory minimum sentence in granting the judgment of acquittal, it did so in error.

-15-

Gonzalez-Vazquez, 219 F.3d 37, 46 (1st Cir. 2000) ("A conviction may be based solely on the uncorroborated testimony of a confidential informant 'so long as the testimony is not incredible or insubstantial on its face.'" (quoting United States v. Ciocca, 106 F.3d 1079, 1084 (1st Cir. 1997)). "It is well-established . . . that determining a witness's credibility, even in the face of a furious attack, is a function that falls squarely within the province of the jury." Foxworth v. St. Amand, 570 F.3d 414, 427 (1st Cir. 2009). Thus, it was for the jury to decide whether to believe Romano's testimony that Merlino was present when Rossetti told the group he was bringing a grenade.

Although there was no corroborating evidence for Romano's testimony that Merlino was present when the grenade was discussed, neither was there any contradictory evidence. Merlino's attorney extensively cross-examined Romano about his recollection of what Merlino was doing during the meeting and why he did not mention the grenade in the notes he made after the meeting. Romano was unswayed in his testimony that Merlino was there when the grenade was discussed, and the jury, who heard all of the evidence, was free to believe his testimony. Romano's rendition of the events–that the group met, that they separated at times as they gathered things for the robbery, but that Merlino was present when Rosetti discussed the grenade–was certainly plausible if believed by the jury. See United States v. Rivera Rangel, 396 F.3d 476, 482

-16-

(1st Cir. 2005) ("So long as the guilty verdict finds support in a plausible rendition of the record,' it must be allowed to stand (and the acquittal must be reversed)." (quoting United States v. Rivera-Ruiz, 244 F.3d 263, 266 (1st Cir. 2001))). Having conducted a de novo review of the evidence, we conclude that Romano's testimony was sufficient to establish that it was reasonably foreseeable to Merlino that one of his coconspirators would be carrying a hand grenade, which was all that was needed to support Merlino's conviction under count three.

D.     **Government's Cross-Appeal on Grant of a New Trial**

Merlino also challenged the sufficiency of the evidence to support his conviction on count three by filing a Rule 33 motion for new trial, which he filed simultaneously with his motion for acquittal. The district court issued a published opinion addressing all four defendants' various postconviction motions for a new trial and for acquittal, and it granted Merlino's motion for acquittal as to count three. However, the court stated that "[t]he motions of all defendants for a new trial are DENIED." 204 F. Supp. 2d at 92. The Government filed a notice of appeal from the judgment of acquittal on June 5, 2002.

Several months later, on December 5, 2002, Merlino filed a Motion for Conditional Determination by the Court Whether a Motion for New Trial Should Be Granted if the Judgment of Acquittal is Reversed, relying on Federal Rule of Criminal Procedure 29(d).

On February 4, 2003, the district court made a handwritten notation on the face of the motion stating "The court would be inclined to grant a new trial on Count III for the reasons it stated for entering a judgment of acquittal." The Government did not file a separate notice of appeal from the district court's February 4 order.

Merlino argues that we lack jurisdiction to review the district court's conditional grant of the motion for a new trial because the Government's notice of appeal, filed on June 5, 2002, designated only the judgment of acquittal and was not effective to appeal the district court's subsequent conditional grant of a new trial on count three, should its judgment of acquittal be reversed.

We conclude that we have jurisdiction to review the district court's conditional grant of a new trial. The district court unequivocally denied Merlino's Rule 33 motion for a new trial as to count three, in which Merlino argued that the only evidence that he was aware of the grenade came from Romano and was insufficient to support his conviction. Merlino later filed a motion for a conditional grant of a new trial based on Rule 29(d), which provides that "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1). Rule 29 does not provide a separate basis for filing

-18-

a motion for a new trial (we note that Merlino could not have filed his motion for a new trial at that late date under Rule 33 because it would have been untimely), and Merlino's motion only asked the court to comply with Rule 29(d)'s mandate to conditionally rule on any motion for a new trial in the event it grants a motion for acquittal.

We "construe notices of appeal liberally and examine them in the context of the record as a whole." United States v. Cheal, 389 F.3d 35, 53 (1st Cir. 2004) (internal quotation marks omitted). Both parties briefed the issue of the conditional grant of a new trial, which was based on the same facts and reasoning as the motion for acquittal. Further, the court stated that it "would be inclined to grant" a conditional new trial for the same reasons it granted the judgment of acquittal. Thus, there is no risk of surprise or prejudice to Merlino if we allow the appeal. See Cheal, 389 F.3d at 53. In these circumstances, we construe the Government's June 5, 2002, notice of appeal of the Judgment of Acquittal effective to bring the district court's February 4, 2003, ruling conditionally granting a new trial before us for appellate review. See id. (construing notice of appeal of conviction and sentence, which included a deferred restitution order, effective to appeal the subsequent amended judgment specifying the amount of restitution); see also United States v. Oberhauser, 284 F.3d 827, 832-33 (8th Cir.) (construing notice of appeal from judgment of

-19-

acquittal sufficient to encompass appeal from a Rule 29(d) conditional grant of a new trial), cert. denied, 537 U.S. 1071 (2002).

Satisfied of our jurisdiction, we turn to the merits of the Government's appeal from the conditional grant of a new trial. District courts are authorized to grant a defendant a new trial "if the interests of justice so require." Fed. R. Crim. P. 33. In considering a motion for a new trial, district courts may "weigh the evidence and evaluate the credibility of witnesses, . . . [but] the remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict." United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001); see also United States v. Villarman-Oviedo, 325 F.3d 1, 15 (1st Cir. 2003) (district court may grant a new trial based on its own evaluation of the evidence only where "the evidence preponderates heavily against the verdict") (internal citation omitted). Nonetheless, "where the award of a new trial is predicated on the district court's evaluation of the weight of the evidence rather than its concern about the effect of prejudicial acts that may have resulted in an unfair trial, ... it [must be] quite clear that the jury has reached a seriously erroneous result." United States v. Rivera Rangel, 396 F.3d 476, 486 (1st Cir. 2005) (internal quotation marks and citations omitted). Because the district court must generally

defer to a jury's credibility assessments, see id. ("A district court 'judge is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result.'" (internal quotations marks and citations omitted), "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." United States v. Cote, 544 F.3d 88, 101 (2d Cir. 2008) (internal quotation marks omitted) (applying the same standard).

We review a district court's grant of a new trial for an abuse of discretion,[5] United States v. Ayala-Garcia, 574 F.3d 5, 16

---

[5]Although the Government relies on United States v. Rothrock, 806 F.2d 318 (1st Cir. 1986), in support of its argument that the district court erred in granting the new trial motion, we have reservations about reliance on that decision. In Rothrock, we stated that "[w]here an order for a new trial is predicated on the district court's evaluation of the weight of the evidence rather than its concern about the effect of prejudicial acts that may have resulted in an unfair trial, we will exercise a more stringent standard of review, requiring the court to refrain from interfering unless it is quite clear that the jury has reached a seriously erroneous result." Id. at 321 (internal quotation marks omitted). We have serious reservations about whether Rothrock's suggestion that we apply a "more stringent standard" of appellate review where an order for new trial is based on the district court's evaluation of the evidence is a correct statement of the law. Rothrock's statement that we apply a "more stringent standard" of review improperly conflates the standard the district court applies in considering a motion for new trial with the standard the appellate court applies in reviewing the district court's decision. We have uniformly reviewed decisions to grant or deny a motion for new trial under an abuse of discretion standard. When the district court considers a motion for new trial, however, it should interfere with the jury verdict only if the jury has reached a seriously erroneous result.

(1st Cir. 2009), recognizing that a district court has greater latitude in considering a motion for a new trial than it does in considering a motion for acquittal, see United States v. Ruiz, 105 F.3d 1492, 1501 (1st Cir. 1997).

Although we do not reach our decision lightly, we conclude that the district court abused its discretion in granting Merlino's conditional motion for a new trial.[6] The district court did not elaborate when it granted the conditional motion for a new trial, stating only that it "would be inclined" to grant it for the same reasons it granted the judgment of acquittal. As the district court recognized in its order granting the judgment of acquittal, and as we have previously discussed in this opinion, the uncorroborated testimony of a government informant is sufficient to establish the facts underlying a defendant's conviction, as long as the testimony is not "incredible or insubstantial on its face." Martinez-Medina, 279 F.3d at 115 (quotation marks and citation omitted). Yet, the district court did not explain why it did not credit Romano's testimony about Merlino's presence during the

---

[6]It at first seems odd, given the district court's initial denial of Merlino's new trial motion, that the court then granted Merlino's conditional new trial motion as to count three several months later. However, we are of the view that having granted Merlino's motion for judgment of acquittal as to count three, the district court erroneously took the view that Merlino's initial motion for new trial on this count was moot. The court could not have been denying Merlino's initial new trial motion as to count three on the merits, as such a denial would have been so clearly inconsistent with the court's grant of the motion for judgment of acquittal on this count.

grenade discussion, even though it did not "doubt the credibility of his testimony on other important aspects of the case." Merlino, 204 F. Supp. 2d at 92. We do not suggest that the district court must always provide such an explanation. There may well be cases where it is apparent from the record why the court found the testimony of an informant facially incredible or insubstantial. Here, however, a careful review of the record points to the opposite conclusion, namely, that Romano's testimony on this point was neither incredible nor insubstantial on its face.

As we have previously discussed, although Romano stated that he did not recall when different people were away from the group during the final meeting on the night prior to the planned robbery, he was unequivocal in his testimony that Merlino was present when Rosetti discussed the grenade, even in the face of vigorous challenges by Merlino's attorney on cross examination and on re-cross examination. His testimony was not internally inconsistent-in fact it was quite consistent on the specific point at issue-or contradicted by any other evidence in the record.

Nevertheless, the district court concluded that Romano's testimony was "too slender a reed to support the mandatory thirty year consecutive sentence . . . ." Merlino, 204 F. Supp. 2d at 92. We cannot avoid the conclusion that the district court's assessment of Romano's testimony was, to some extent, informed by its concern about the lengthy mandatory sentence. To the extent that was the

case, such consideration of the penalty further undermines the district court's conclusion as to the credibility and reliability of Romano's testimony.  Cf. Shannon, 512 U.S. at 579.  Because Romano's testimony regarding Merlino's presence when the grenade was discussed was ultimately consistent, uncontradicted, and unequivocal, we conclude that the district court abused its discretion in granting the motion for a new trial.  See Rivera Rangel, 396 F.3d at 486 ("[B]ecause it is not clear that the jury ... reached a seriously erroneous result, we find that the district court manifestly abused its discretion in awarding [defendant] a new trial.") (internal quotations marks and citation omitted).

## III.

We affirm Merlino's convictions and sentences on counts one, two, and four; we reverse the district court's judgment of acquittal on count three and its conditional grant of a new trial on that count; and we reinstate the jury's verdict of guilty on count three.  We remand for further proceedings consistent with this opinion.